EDWARD RUPPEL, RESPONDENT, v. GEORGE CLAYES, APPELLANT.—72. S. W. (2d) 833.

St. Louis Court of Appeals. Opinion filed June 26, 1934.

*Green, Henry & Remmers* for appellant.

*Walter F. Stahlhuth* and *Allen, Moser & Marsalek* for respondent.

McCULLEN, J.—This is a suit for damages for personal injuries alleged to have been sustained by respondent, plaintiff below, as the result of negligence of appellant, defendant below. A trial before the court and a jury resulted in a verdict for plaintiff and against defendant in the sum of $6,000. Defendant appeals.

Defendant complains that the court erred in permitting plaintiff's counsel, over defendant's objection, to tell the jury in his opening statement that he expected to show that defendant was under the influence of liquor at the time of the accident in question, after defendant's counsel had told the court, out of the hearing of the jury, that he would admit defendant's liability in the case and would object to any reference to intoxicating liquor.

Defendant further complains that the court erred in permitting plaintiff, over the objection of defendant, to introduce evidence indicating that the defendant was under the influence of liquor at the time of the accident. In support of his contentions defendant argues that inasmuch as liability was admitted at the start of the case, the evidence complained of had no bearing on the extent of plaintiff's injuries, or the amount of damages to be awarded, and since there was no prayer for punitive damages in plaintiff's petition, such opening statement and such evidence were only calculated to inflame and prejudice the jury against defendant.

Prior to the *voir dire* examination of the jurors, counsel for both

parties conferred with the court, out of the hearing of the jury. During this conference, counsel for defendant, after admitting that an insurance company was interested in the defense of the case, and naming the company, said:

"Furthermore, I am going to admit liability, and limit the thing to the actual damage. Now, then, the pleadings allege that this defendant had been drinking—George Clayes had been drinking prior to this accident. I don't think he was intoxicated and, therefore, I am going to admit liability and object to any testimony of intoxication as not bearing upon the question of injury, the question of negligence being admitted."

Counsel for plaintiff thereupon declined to agree with the view of defendant's counsel as to the admissibility of evidence of defendant's intoxication. Thereafter, when the jury had been impaneled in the usual manner, plaintiff's counsel, in his opening statement to the jury, described the scene of the accident and told the jury what plaintiff's evidence would show with respect to the manner in which the accident happened. During the course of this statement, Mr. Moser, plaintiff's counsel, said:

"The evidence will show this, as possibly an explanation for the manner in which this accident happened, that Mr. Clayes was under the influence of liquor at the time that it occurred."

Whereupon, Mr. Henry, counsel for defendant, said:

"Just a minute. If the court please, I want to note my objection to the remarks for the reason that we have previously stated, we are going to admit liability. There can be no purpose in the remarks except to inflame the jury."

A little farther on in plaintiff's opening statement the following occurred:

"MR. MOSER: The evidence will show, gentlemen, that while they were still out there at the scene of the accident Mr. Clayes was observed to stagger. He got out of his automobile once or twice during the time these other people were making an effort to get his automobile out of the ditch. His breath smelled of whiskey, and during the time that he was down here at that filling station—

"MR. HENRY: Pardon me. It will be understood my objection goes to all that type—

"THE COURT: Yes, Mr. Henry.

"MR. HENRY: And I except.

"MR. MOSER: And on the way down then, to the doctor, Mr. Clayes was telling Mr. Ruppel what a good fellow he was, and he said, 'You are a brick;' and he said, 'You are a prince;' and he said, 'I knew your mother and I knew your grandmother,' and all things like that. The fact was he was a total stranger to him. He had never seen this

man before, much less his grandmother; and eventually, after a few pleasantries of that sort, why Mr. Ruppel did manage to get to a doctor, an hour or more after this thing happened, and got medical treatment.''

Plaintiff's petition charged that while defendant was operating his automobile near plaintiff's home at Ballwin, St. Louis County, Missouri, he ran said automobile into a ditch, and thereafter requested plaintiff to assist him in removing it therefrom, which plaintiff did, by procuring his own automobile, attaching a rope thereto and pulling defendant's automobile out of the ditch; that after plaintiff had removed defendant's automobile from the ditch, plaintiff was in the act of removing the rope attached to the rear of plaintiff's automobile, whereupon, defendant negligently started his automobile forward, causing it to collide with plaintiff, and with the rear of plaintiff's automobile, crushing plaintiff between the two automobiles, thereby injuring plaintiff.

Among other things, plaintiff alleged in his petition, the following: ''Defendant negligently started his automobile forward at a time when plaintiff was standing about twelve feet ahead of and directly in front of same and immediately at the rear of plaintiff's automobile; that defendant negligently drove and operated his said automobile while he was drunk and intoxicated and under the influence of intoxicating liquor; . . .''

Defendant filed an answer in which he denied each and every allegation in plaintiff's petition.

After counsel for plaintiff had made his opening statement to the jury, defendant's counsel, in his opening statement to the jury, among other things, said:

''This is a case where, as Mr. Moser stated, Mr. Clayes was getting out of this ditch and in the course of getting out, this accident happened. We are coming to you and admitting that if Mr. Ruppel was injured in this case we are liable for his injury. We are not going to deny that we are liable for his injury, if you find he was injured, and we want to say that we also admit any medical expense which he may have been put to for treatment. . . . The circumstances of the accident will probably be shown to you, but—as to just how it happened—we emphatically deny Mr. Clayes was intoxicated at this time. The evidence will show, if there is any evidence introduced on it, positively Mr. Clayes was not intoxicated. As I stated before, that is all we have to say about it. We are not interested in, we are not attempting to suppress any evidence of the injury; if you find him injured, why, o. k. . . . We submit the matter to you merely upon the measure of damage on his injury to his knee.''

The ''admission of liability'' made by defendant in the conference with the court out of the hearing of the jury, was considerably modi-

fied and qualified when defendant's opening statement was made to the jury. It will be noted that defendant's counsel used the qualifying word, "if" in his opening statement to the jury. This qualification appears in three places therein, as follows: "If plaintiff was injured;" and "if you find he was injured;" and also, "if you find him injured, why, o. k."

In considering this question, it must be remembered that plaintiff's petition charged that defendant operated his automobile while he was under the influence of intoxicating liquor, and that defendant's answer, by way of a general denial, put this charge, as well as all other charges in the petition, in issue. In addition thereto, defendant's counsel, in his opening statement, said:

"We emphatically deny Mr. Clayes was intoxicated at this time. The evidence will show, if there is any evidence introduced on it, positively Mr. Clayes was not intoxicated."

We are of the opinion that even if defendant had made an unqualified general "admission of liability" instead of the decidedly qualified one which he did make, it would, nevertheless, have been the privilege of plaintiff to make such statement to the jury and to introduce, in his own way, such evidence as was relevant to the issue referred to. We know of no rule of law under which plaintiff could have been deprived of this privilege by such qualified admissions as were made by defendant herein.

In Maloney v. United Rys. Co. of St. Louis (Mo.), 237 S. W. 509, a suit for damages, in which a street car company was charged with negligence in prematurely closing the doors and raising the step of one of its street cars, plaintiff therein testified that after being caught in the door, she was dragged by the street car. Defendant therein objected to the introduction of evidence showing the start of the street car on the ground, that such alleged negligence was not relied on by plaintiff, and that the admission of such testimony could only inflame the jury against defendant. Answering this contention; our Supreme Court quoted with approval the language used by Judge Faris in State v. Pfeifer, 267 Mo. 23, 28, 183 S. W. 337. In the Pfeifer case it was urged by defendant therein that the admission of evidence by the trial court of other acts showing other crimes in connection with the crime for which the defendant was on trial, was incompetent and hurtful to the defendant. Judge Faris, speaking for the Supreme Court in that case, said that learned counsel lost sight of the fact that while the testimony so bitterly complained of may have tended to show other acts and other crimes, "yet the proof also showed that all of these acts and things were part of the res gestae and admissible as such regardless of the fact that defendant may have been hurt by testimony concerning them. [State v. Anderson, 252 Mo. 83.] This

was his misfortune for which he and not the State is at fault. He should see to it that he commits but one felony at a time.''

While it is true the Pfeifer case was a criminal case, as was the Anderson case cited therein, our Supreme Court, nevertheless, gave its approval to the principle of the two cases just mentioned in deciding the civil case of Maloney v. United Rys. Co. of St. Louis, supra. Having this principle in mind, we think it is proper to say in the case at bar that if defendant was under the influence of intoxicating liquor at the time of the accident, it was his misfortune, but defendant's misfortune in this respect cannot deprive plaintiff of the right to present to the jury, in his own way, competent and relevant evidence to show all the circumstances attending the accident.

Counsel for defendant cite no case and we have not been able to find any in which it has been held that a party plaintiff is bound to except the admissions of a party defendant with respect to an issue in the case, and is precluded by such admission from presenting his evidence to prove his case in his own way.

The general rule is stated in 22 C. J., p. 330, as follows:

''A party is not required to accept a judicial admission of his adversary, but may insist on proving the fact.''

The courts of last resort of other States have, in numerous cases, followed the general rule above stated. A few such cases will show the reasoning of the courts on the question.

In Baumier et al. v. Anteau, 79 Mich. 509, 44 N. W. 939, plaintiffs brought an action for damages against defendant for unlawful dispossession. During the opening statement of plaintiff's counsel, defendant's counsel admitted that the defendant dispossessed the plaintiffs, and by such admission attempted to have evidence showing the circumstances under which the dispossession occurred, excluded. Defendant's objection to such evidence was overruled. It was contended that such ruling was error. Answering this contention, the court said:

''The right of the plaintiffs to present their proofs to the jury, in their own way, subject to the rules of evidence, was a substantial and important one. Defendant, by his proffered admission, could not deprive them of it. The res gestae of a transaction are usually significant, and tend to enlighten the jury upon the matters in issue.''

In Dunning v. Maine Cent. R. Co., 91 Maine, 87, 39 Atl. 352, 356, the court declared the rule as follows:

''It does not lie in the power of one party to prevent the introduction of relevant evidence by admitting in general terms the fact which such evidence tends to prove, if the presiding justice, in his discretion, deems it proper to receive it. Parties, as a general rule, are entitled to prove the essential facts—to present to the jury a picture of the events relied upon. To substitute for such a picture a naked ad-

mission might have the effect to rob the evidence of much of its fair and legitimate weight. No exception lies to the admission of relevant evidence under such circumstances."

In Terre Haute Electric Co. v. Kiely, 35 Ind. App. 180, 72 N. E. 658, objection was made to testimony concerning the character of injuries sustained by the deceased therein, on the ground that it was admitted that deceased's injuries caused his death. The objection was overruled. On appeal defendant contended the ruling was error. Holding that the ruling was not error, the appellate court said:

"One may not thus limit his adversary's method of making proof."

We are of the opinion that plaintiff was under no duty to accept defendant's offer of an admission of liability, qualified or unqualified, and we see nothing in the record tending to show any effort on the part of plaintiff, or his counsel, to inflame the minds of the jurors against defendant in presenting this feature of the case.

We, therefore, hold that the court committed no error in overruling defendant's objection to the statement made to the jury by plaintiff's counsel, nor did the court commit any error in permitting plaintiff to introduce the evidence referred to.

Defendant next contends that the verdict of the jury was so excessive as to show that it was the result of prejudice against defendant and that the jury, in fact, added punitive damages to plaintiff's actual damages and thereby clearly indicated that the evidence of intoxication influenced the result. We are unable to agree with this contention. Plaintiff, at the time of the accident on July 12, 1929, was forty-four years old. He was a laborer by occupation, having been employed by the Missouri Portland Cement Company since 1911. In addition to working for the company named, he would do a little farming every summer between times when he was laid off from his employment.

The evidence showed that plaintiff was caught between the two automobiles, his right knee being struck on its outer lateral side. He was immediately rendered incapable of standing up without assistance. Plaintiff's testimony was not clear as to the exact length of time he was confined to his home after he sustained the injury, but it appears he was not able to leave his home until some time in the latter part of July, 1929. During the period that he was confined to his home, he received treatments at the hands of his family physician, Dr. Sandfos, and thereafter was treated by Dr. Sandfos at his office. On August 9, 1929, twenty-eight days after the accident, plaintiff returned to his work at the Missouri Portland Cement Company, but was required to use a crutch. He was given duties which permitted him to sit while at his work.

Plaintiff testified that his knee bothers him and he finds it difficult

to do any work which requires the climbing of stairs. He said that he is bothered at night with pain in the knee, and that after he lies in one position for a half hour or so, it becomes so painful it is necessary for him to turn it. He said there is a drawing sensation in the leg at the knee, as if some of the leaders therein are short.

There was testimony to show that he has limped constantly since the accident, the limp being worse at some times than at others. Since the accident he has found it impossible to plow, as he formerly did, and cannot remain on his feet more than four or five hours at a time. At the end of such a period, he must quit and take a rest.

Testimony by the foreman of the Missouri Portland Cement Company, under whom plaintiff worked, was to the effect that he favored plaintiff after he was injured because, as he said, plaintiff was "a darn reliable worker." This witness testified that plaintiff drags the injured leg when attempting to go up steps.

Dr. Frank Sandfos testified that he treated plaintiff regularly for the injury to his knee from July 12, to October 26, 1929, and said there was undoubtedly an injury to the ligaments of the knee, and there is no doubt that there is a shortening of the ligaments. This witness said:

"There would be certain injury to those ligaments holding the joint and by the shortening of the tendons would cause the ligaments to tire. This condition could cause pain."

Dr. Sandfos stated that, having in mind that the accident happened three years prior to the trial, and taking into consideration the findings in connection with his own examination made several weeks prior to the trial, the limitation of motion, swelling and pain under the conditions described, in his opinion the condition of plaintiff's knee is a permanent disability. The witness said he knew plaintiff before the accident and that there was nothing wrong with either of his knees at that time; that he had observed the manner in which plaintiff walked since the accident, and noticed a slight limp, which is consistent with the findings of the witness as to plaintiff's condition.

Dr. Fred W. Bailey, called as a witness for plaintiff, testified that he made an examination of plaintiff, and in connection therewith took X-ray pictures, saw them developed and examined and reread them with the roentgenologist; that for the purposes of comparison, X-ray pictures were taken of both of plaintiff's knees; that the right knee showed a half inch increase in circumference over the left knee, there is less flexibility of the knee, but no apparent weakening or reflexation of the lateral ligaments. He said there is undoubtedly evidence of pain on complete extension and complete flexion; that there is a difference of about ten degrees of complete flexion of the injured knee over the uninjured knee. An X-ray examination of both knees

was made by Dr. Joseph Peden, whose report was read by the witness, Dr. Bailey. The report stated:

"Radiograms of both knees, using the left for comparison, in both views, do not show any definite bone or joint pathology, but there is a calcification just internal to the internal condyle of the femur, which suggests very strongly a calcification in the ligament."

Dr. Bailey testified further that in his opinion the type of injury was traumatic, direct trauma to the knee joint from one side to the other, but that it was not sufficiently severe to produce a fracture of the bone, "but more likely an arthritis, temporary probably in type, and if the knee was considerably swollen, very likely an inflammation of the lining of the membrane of the joint. . . ."

Dr. Bailey gave it as his opinion, based upon his examination, that the injury to plaintiff's knee "remains as a periarticular chronic inflammation, considering, of course, the history as you described it. . . ." He said that he observed plaintiff stepping up and down the steps when plaintiff was not aware that he was watching him, and that plaintiff, in using the injured member, "apparently did not desire to lift it directly up or place it in a normal manner, but that he lifted it up and swung it around in a sort of broken manner to the joint, and went down in the same manner; just a lack of normal flexibility."

The doctor said that following his examination, and after a study of the case, he estimated there was between fifteen and twenty per cent functional disability in plaintiff's knee.

Dr. Leo A. Will, called as a witness for defendant, testified that he made an examination of plaintiff's lower extremities, with particular reference to plaintiff's right knee; that the X-ray examination showed no definite evidence of fractures or dislocation of the bone, disease or injury, but there was a shadow that had the appearance of being calcification of the soft structure. A lateral view of the knees, he said, showed no evidence of disease or injury, but there is a calcified area approximately three-quarters of an inch in length "just off the margin of the condyle of the femur that is not attached to bone." He said:

"We see these calcified areas in this particular type of soft structures, and particularly about joints, where there is no injury; . . . You see them sometimes where there has been a little tear in the periosteum and nature then throws out some calcium deposits in that region."

The witness further testified in this connection that he did not see how the injury could produce a great deal of disturbance in function, saying:

"It is not interfering with the joint itself, that is, it is not in the joint."

The verdict of the jury in this case was for the sum of $6,000. There is no rule by which the precise and exact amount of damages, which should be awarded to an injured party, can be measured. The assessment of damages in a personal injury suit must necessarily be left largely to the jury and the trial court, and an appellate court will not interfere, except in a case where it is satisfied that the verdict of the jury is excessive.

We have carefully considered the evidence in this case, and we are of the opinion that the verdict of the jury is too high for the character of the injury sustained, and if plaintiff will, within five days, remit the sum of $1,000, the judgment of the circuit court will be reversed and the cause remanded, with directions to enter a new judgment in favor of plaintiff and against defendant, in the sum of $5,000, with interest at the rate of six per cent per annum from November 17, 1932, the date of the original judgment; otherwise, the judgment will stand reversed and the cause remanded to the circuit court for a new trial.

*Becker, J.*, concurs; *Hostetter, P. J.*, absent.