**Mark GRIFFIN, Respondent,**

v.

**The KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.**

**Nos. WD 53149, WD 53172.**

Missouri Court of Appeals,
Western District.

March 24, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1998.

As Modified April 28, 1998.

Harlan D. Burkhead, Jeffrey P. Ray, Lathrop & Gage, Kansas City, for appellant.

Ronald J. Stites, William C. Hopkins, Connie M. Francis, Stites, Hopkins, Fair & Riederer, Kansas City, for respondent.

Before ELLIS, P.J., and LAURA
DENVIR STITH and HOWARD, JJ.

ELLIS, Presiding Judge.

On March 12, 1993, at approximately 6:20 p.m., Jerry Griffin was driving west across the Walnut Street grade railroad crossing in Amsterdam, Missouri, when his automobile was struck by a south-bound freight train operated by the Kansas City Southern Railway Company ("KCS"). Griffin died as a result of this accident. Subsequently, Jerry Griffin's five adult children ("Respondents") filed a wrongful death suit in the Circuit Court of Jackson County pursuant to § 537.080, et seq.[1]

Trial began on March 25, 1996. On April 8, 1996, the jury returned a verdict assessing

---

[1]. All statutory references are to RSMo Supp. 1992, unless otherwise noted.

actual damages at $2,500,000 and finding that KCS was 67% at fault and Griffin was 33% at fault. Thereafter, the trial court entered judgment in accordance with the verdict, awarding Respondents $1,675,000 in actual damages.[2] KCS appeals from that judgment.

■ KCS initially challenges the trial court's use of Instruction # 6, a verdict director submitted by Respondents. That verdict director allowed the jury to find KCS liable if they found either: (1) KCS failed to keep a careful lookout, (2) KCS failed to sound an adequate and timely warning, or (3) KCS failed to slow the speed of its train to provide an adequate visual warning of its approach.[3] KCS challenges each of these submissions. Where, as here, a disjunctive instruction is submitted to the jury, each alternative submitted in the instruction must be supported by evidence which, if true, would support a verdict for the party submitting the instruction. *O'Neal v. Pipes Enters., Inc.*, 930 S.W.2d 416, 424 (Mo.App. W.D.1995).

In its first point, KCS argues that the trial court erred in submitting Respondents' verdict director because the submission relating to the speed of the train was preempted by federal law. It is undisputed that the train was traveling at forty miles per hour as it approached the Walnut Street crossing. Likewise, it is undisputed that the federally mandated speed limit for that stretch of railroad track was forty miles per hour. In *Barlett v. Kansas City Southern Ry. Co.*, 854 S.W.2d 396 (Mo. banc 1993), the Missouri Supreme Court held that while some claims based on dangerous conditions at railroad

crossings are permissible, federal law preempts any state common law claim based on excessive speed. *Barlett*, 854 S.W.2d at 399 (citing *CSX Transportation Inc. v. Easterwood*, 507 U.S. 658, 664–76, 113 S.Ct. 1732, 1738–44, 123 L.Ed.2d 387 (1993)). The *Barlett* court stated that a common law claim of excessive train speed is defined as " 'traveling too quickly given the time and place.' " *Barlett*, 854 S.W.2d at 400 (quoting *Easterwood*, 507 U.S. at 676 n. 15, 113 S.Ct. 1743 n. 15 (1993)). "Thus, while a railroad may be liable for failure to remedy unsafe conditions, it may not be liable for travelling at an unsafe speed in areas with such conditions." *Barlett*, 854 S.W.2d at 399.

*Barlett* held that the submission of a claim in the verdict director, which allowed the jury to find the defendant liable if it found the train was operated at an excessive speed, was preempted by federal law and, thus, filed to state a claim. *Barlett*, 854 S.W.2d at 399. However, *Barlett* went on to state that a different submission, requiring a finding (1) that the flashing warning lights were not working, (2) that the train crew knew or should have known that the warning lights were not working, and (3) that the crew failed to slacken the speed of the train in response to this hazard, was not preempted and was properly submitted to the jury. *Id.* "Where a specific, individual hazard exists, a train has a duty to slow down or stop," and a submission based on that duty is not prohibited by *CSX Transportation Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)). *Id.* Accordingly, a claim that a train failed to slacken its speed in response to a specific hazard is cognizable

---

**2.** The jury also awarded Respondents $2,000,000 for aggravating circumstances. After initially entering judgment in accordance with this verdict, the trial court granted KCS's motion for new trial on the issue of aggravated circumstances and set aside that award.

**3.** Instruction # 6 reads:
In your verdict, you must assess a percentage of fault to defendant whether or not Jerry Griffin was partly at fault if you believe:
First, plaintiffs were the children of Jerry Griffin,
Second, either:
defendant failed to keep a careful lookout, or
defendant failed to sound an adequate and

timely warning, or defendant failed to slow the speed of its train to provide an adequate visual warning of its approach and
Third, defendant, in any one or more of the following respects submitted in paragraph second, was thereby negligent, and
Fourth, such negligence directly caused or directly contributed to the death of Jerry Griffin.
The term "negligent" or "negligence" as used in this instruction means the failure to use ordinary care. The phrase "ordinary care" means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstance.

and does not infringe on federal regulations. *Id.*

■ Respondents concede that common law claims of excessive speed are preempted by federal regulations issued pursuant to the Federal Railroad Safety Act, 45 U.S.C. § 434 (1990), and the decision in *Barlett.* However, they contend that no such claim was submitted to the jury. Respondents argue that the instruction merely allowed the jury to find KCS liable if it found that the train failed to slow down to avoid the impending collision after KCS personnel noticed Griffin's vehicle.

While the claim described by Respondents on appeal resembles the flashing lights submission in *Barlett* and would clearly have been submissible, *the instruction actually submitted in this case failed to instruct the jury accordingly.*[4] Respondents' verdict director merely states that the "defendant failed to slow the speed of its train to provide an adequate visual warning of its approach." This submission fails to set forth a specific individual hazard, like the failure of the whistle to properly sound or the unwavering approach of Griffin's vehicle, nor does it state that the train crew knew or should have known of such a hazard. In the case at bar, the clear language of the instruction countenanced liability upon a finding that the train was moving too fast for approaching motorists to notice it in time. However, it was not conditioned on the jury first finding a specific individual hazard, such as failure of the whistle or horn to properly sound, and that the crew knew or could have known of such hazard. As written, the instruction permitted the jury to find KCS liable merely for traveling too quickly considering the time and place. This is precisely the type of claim prohibited by *Bartlett. Id.* Accordingly, the portion of the verdict director relating to the speed of the train was erroneous. *Mott v. Missouri Pac. R.R.*, 926 S.W.2d 81, 85 (Mo. App. W.D.1996). The point is granted, and the judgment must be reversed.

■ The normal remedy upon finding an erroneous submission to the jury is reversal and remand for a new trial.[5] Therefore, it would generally be unnecessary to address other issues raised on appeal. KCS, however, contends "there was no evidential basis for the submission of the other two prongs of the plaintiffs' verdict director, so that the remedy to be granted is outright reversal and judgment for KCS in accordance with the provisions of Rule 84.14 that 'the appellate court shall ... give such judgment as the court ought to give.'" Consequently, we will consider KCS's argument that there was no evidentiary basis for the plaintiffs' to submit on KCS's failure to keep a careful look-

---

4. The Supreme Court's opinion in *Barlett* does not contain a verbatim recital of the verdict director given in that case. However, the prior, superseded opinion of the Southern District does quote the entire instruction. See *Barlett v. Kansas City Southern Railway Company*, No. S.D. 17657, 1992 WL 324715 (Mo. App. S.D. Nov. 12, 1992). The instruction provided:

In your verdict you must assess a percentage of fault to Defendant Kansas City Southern Railway, whether or not Plaintiff was partly at fault, if you believe;
First, either;
Defendant operated the train at an excessive speed, or
Defendant failed to sound an adequate and timly warning, or
Defendant failed to amintain the right of way at the public grade crossing at Twentieth Street so that it was reasonably clear of vegetation and undergrowth for a distance of 250 feet each way from such crossing, where such things did materially obsure approaching trains from the view of travellers (sic) on the street, or

*The flashing lights did not come on in a timly manner and Defendant knew or by using ordinary care could have known of this condition in time thereafter to have stopped, or slackened the speed of the train, but Defendant failed to do so*, and
Second,
Defendant, in any one or more of the respects submitted in paragraph First, was thereby negligent, and
Third,
Such negligence directly caused or directly contributed to cause damage to Plaintiff.
*Id.* at 5 (emphasis added).

5. In *Barlett*, our Supreme Court also resolved confusion in prior cases regarding the relationship between damages and liability, after adoption of comparative fault. The Court held that damages are dependent on liability and therefore, reversal of a finding on liability compels reversal on damages as well, resulting in a new trial on all issues. *Barlett*, 854 S.W.2d at 403.

out or failure to sound an adequate and timely warning.

■ As noted, *supra*, any instructions submitted to a jury must be supported by substantial evidence. *Baumgartner v. Bi-State Dev. Agency*, 811 S.W.2d 63, 65 (Mo. App. E.D.1991). "Where an instruction is disjunctive, all submissions must be supported by substantial evidence." *Elfrink v. Burlington Northern R.R.*, 845 S.W.2d 607, 611 (Mo.App. E.D.1992). "Substantial evidence is competent evidence from which a trier of fact can reasonably decide the case." *Mathis v. Jones Store Co.*, 952 S.W.2d 360, 366 (Mo.App. W.D.1997). When reviewing the submissibility of an instruction, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the instruction and disregard any evidence or inferences to the contrary. *Barlett v. Kansas City Southern Ry.*, 854 S.W.2d 396, 399 (Mo. banc 1993).

KCS argues Respondents failed to meet their "unavoidable burden of proof to produce evidence from which the jury could conclude or at least reasonably infer that the alleged lack of a whistle warning was a proximate cause of the accident." It contends that there was "no evidence that [Griffin] would have made use of his auditory faculties" and that the only evidence presented at trial tended to support a conclusion that Griffin would not have heard a warning if it had been sounded. In this regard, KCS points to evidence that Griffin's car windows were up and that he was not wearing his hearing aids at the time of the accident.

■ KCS misconstrues the burden of proof on this issue. By statute, a railroad is required to continually sound a whistle or horn on its locomotives within a distance of 80 rods [6] from any place where the tracks intersect a road. *Elfrink*, 845 S.W.2d at 612 (citing § 389.990 RSMo (1986)).[7] Section

389.990 provides that a railroad company shall "be liable for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or such horn or whistle sounded as required by this section; provided, however, that nothing herein contained shall preclude the [railroad] sued from showing that the failure to ring such bell or sound such horn or whistle was not the cause of such injury." § 389.990. Accordingly, there is a legal presumption that an automobile operator would have heeded the audio warning signals of a train had they been sounded, and the railroad bears the burden of rebutting that presumption. *Vandergriff v. Missouri Pac. R.R.*, 769 S.W.2d 99, 103 (Mo. banc 1989). While evidence was presented at trial that would support a conclusion that Griffin might not have heard the whistle even if it had been sounded, the question of whether KCS overcame the presumption that Griffin would have heard and heeded such a warning was properly left to the jury. *Borrson v. Missouri–Kansas–Texas R.R.*, 351 Mo. 229, 172 S.W.2d 835, 845 (Mo.1943).

■ KCS also claims Respondents failed to present any evidence to support their failure to keep a careful lookout submission. KCS relies on testimony from the train's conductor and brakeman that they were looking ahead and keeping a careful lookout. However, in making the claim, KCS overlooks an abundance of evidence. The train conductor testified that from Main Street he could see the Walnut Street crossing about 400 feet ahead and he could see about 150 feet of Walnut Street to the east. However, the conductor testified that he did not see Griffin's car until the train was 90 feet from the crossing. Moreover, a local resident that arrived on the accident scene testified that when she arrived, the conductor was startled and admitted that he had not seen Griffin

---

6. 80 rods = 1320 feet

7. Section 389.990 states:
   [A] horn or whistle shall be attached to such engine and be sounded at least eighty rods from the place where the railroad shall cross any such road or street ... and be sounded at intervals until it shall have crossed such road or street ... and [the railroad] shall also be

liable for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or such horn or whistle sounded as required by this section; provided, however, that nothing herein contained shall preclude the [railroad] sued from showing that the failure to ring such bell or sound such horn or whistle was not the cause of such injury.

until the collision. The events recorder from the train indicated that the emergency brake on the train was not applied until five seconds after the train hit Griffin. Multiple witnesses testified that the train never sounded an audio warning of its approach. Furthermore, none of the crew recalled ever seeing Harold · Terry's car, which went through the crossing moments before the collision. This evidence is clearly sufficient for the jury to determine that the train crew failed to keep a careful lookout.

KCS further argues that even if the crew was not keeping a careful lookout, Respondents failed to present any evidence that this was the proximate cause of the accident. KCS cites to *American Family Mut. Ins. Co. v. Robbins*, 945 S.W.2d 52 (Mo.App. E.D. 1997), for the proposition that in order "[t]o make a submissible case for failure to keep a careful lookout, substantial evidence, not speculative deductions, must show that the driver had sufficient time and distance, considering the movements and speed of the vehicles to take effective action to avoid a collision." *Id.* at 55. In making its argument, KCS relies on their expert's testimony that Griffin needed half a second more to clear the crossing and that, in order for the train to have slowed enough to have allowed Griffin that extra half second, it would have needed to start braking 650 feet from the intersection. KCS argues that because the Walnut street crossing was not visible from that distance, Respondents could not establish causation on this issue.

■■■■ The contention overlooks the fact that the jury was entitled to take into account more than mere ability to stop the train. Respondents simply had to show that the crew had sufficient time and distance to take "effective action" to avoid the collision. *Robbins*, 945 S.W.2d at 55. Had the crew of the train seen Griffin prior to the collision, they might have sounded their whistle and applied the emergency brakes. The jury could reasonably infer that the noise resulting from either or both of these procedures

might have warned Griffin in time for him to either speed up or stop.[8] Moreover, whatever additional time the application of the brakes would have created was time in which Griffin might have seen the train and reacted.

In addition, it appears that the data from the events recorder provided sufficient evidence from which the jury could infer a sufficient stopping distance. According to Respondents, the event recorder showed that the train took precisely six seconds to travel the .07 miles (380 feet) from Main to Walnut and further showed that once the emergency brake was applied, the train traveled .06 miles in the following six seconds and had slowed down to 38 miles per hour. Therefore, Respondents reason the jury could reasonably infer that had the brakes been applied at Main Street, the train would have only traveled .06 miles in the next six seconds, leaving it 52.8 feet from Walnut, traveling at a speed of 38 miles per hour, at the time Griffin was crossing the tracks. At 38 miles per hour, the train would be traveling at 55.7 feet per second. Respondents claim that based on this evidence, the jury could have reasonably inferred that the train could have slowed down enough to avoid the collision if the brakes had been applied at Main Street.

We need not definitively decide whether the events recorder data accomplishes all that Respondents contend. We are reviewing this issue only to determine whether outright reversal, without remand, pursuant to Rule 84.14 is appropriate. From the preceding discussion, it is apparent that it is not and that the case must be reversed and remanded for a new trial.

In sum, the trial court did not err in denying KCS's motion for directed verdict because Respondents presented sufficient evidence to support their submission of their failure to provide an adequate and timely warning claim and their failure to keep a careful lookout claim. However, the trial court did err in submitting Respondent's

8. The evidence indicated that Griffin was driving slowly and could have stopped his vehicle in as little as 12 feet. The train conductor testified that when he first saw Griffin, the train was 90 feet from the intersection and the car was 30 feet from the intersection. Under these circumstances, even a warning at that late time might have been adequate.

claim relating to the speed of the train because that claim is preempted by federal law, and consequently, the cause must be reversed and remanded for new trial. As a result, we need not address KCS's remaining points on appeal.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.