Curtis BURROWS, Respondent,

v.

**UNION PACIFIC RAILROAD COMPANY and National Railroad Passenger Corporation d/b/a Amtrak, Appellants.**

No. ED 87314.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 23, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 6, 2007.

Application for Transfer Denied
May 1, 2007.

 .

Richard E. Boyle, Mark R. Kurz, Michael C. Hermann, Gundlach, Lee, Eggmann, Boyle & Roessler LLC, St. Louis, MO, for appellants.

Jerome J. Schlichter, Nelson G. Wolff, Mary L. Perry, Schlichter, Bogard & Denton, St. Louis, MO, for respondents.

GARY M. GAERTNER, SR., Judge.

Appellants, Union Pacific Railroad Company (individually "Union Pacific") and National Railroad Passenger Corporation d/b/a Amtrak (individually "Amtrak") (collectively "Defendants"), appeal from the judgment of the Circuit Court of the City of St. Louis, following a jury trial, entered in favor of Respondent, Curtis Burrows ("Plaintiff"). Plaintiff brought a Federal Employers' Liability Act ("FELA") claim against his employer, Union Pacific, and a negligence claim against Amtrak to recover damages for personal injuries he sustained after he was struck by an Amtrak train. The jury found Plaintiff's total damages to be $5 million. We affirm.

On September 23, 2003, Plaintiff, who was 44 years old, and fellow Union Pacific employees were repairing a section of track near Washington, Missouri. This section of the track was part of a double "mainline track," consisting of two parallel, adjacent tracks running east-west. Union Pacific owned both tracks and, by written agreement, permitted Amtrak to operate trains on the tracks subject to Union Pacific's control over train movement and speed. While Plaintiff and his crew repaired one track ("the track under repair"), Union Pacific permitted Amtrak to operate trains on the adjacent track ("the live track").

During the repairs, Plaintiff was working with a co-worker, Tim Miesner ("Miesner"), using a tamper. A tamper is a 75 to 80 foot long machine with two fully enclosed cabs. Plaintiff worked from one cab while Miesner worked from the other. Ordinarily, Plaintiff would be able to operate the tamper from the inside of his cab, but because a button inside the tamper for releasing clamps to lift the track did not work, Plaintiff had to exit the tamper's cab, stand between the track under repair and the live track, and manually release the clamps. Union Pacific knew about this problem with the tamper about one week before September 23 because its employees had requested that it be fixed.

The tamper approached a farm crossing and if the tamper's clamps were not released from the track, the machine or the crossing would have been damaged. Thus, Plaintiff left the cab and manually released the tamper's clamps.

While Plaintiff was outside of the cab, an Amtrak employee radioed Miesner and told him that an Amtrak train was approaching and would soon be passing on

the live track. Plaintiff did not receive the radio message because Union Pacific had not provided him with a radio device. Although Plaintiff was outside of the cab in an unsafe position, Miesner responded to the radio message and stated that the live track was clear of workers. Additionally, Miesner forgot to tell Plaintiff that the Amtrak train was approaching.

As the Amtrak train approached at a speed of 66 miles per hour, the engineer operating the Amtrak saw Plaintiff from approximately 2600 feet away because Plaintiff was wearing a bright yellow vest and helmet. The engineer sounded the train's horn, but Plaintiff could not hear the horn because the tamper was generating its own loud noise and vibrations and he was wearing ear plugs. In addition, because Plaintiff's back was to the oncoming train, he could not see it.

After the engineer saw Plaintiff, the Amtrak train accelerated from 66 miles per hour to 73 miles per hour. The Amtrak train struck Plaintiff at a speed of approximately 73 miles per hour. As a result, Plaintiff was thrown to the ground and suffered numerous physical injuries.

Following the accident, Plaintiff brought a FELA claim against Union Pacific and a negligence claim against Amtrak to recover damages for personal injuries he sustained after he was struck by the Amtrak train. Specifically, Plaintiff alleged that, as a result of Defendants' negligence, he suffered physical injuries to his hand, shoulder, spine, hips, and legs; as well as severe pain and suffering; psychological and emotional injury; and mental anguish and anxiety. Plaintiff sought compensatory and punitive damages.

Defendants denied liability in their answer to Plaintiff's petition. As an affirmative defense, Defendants alleged that Plaintiff was contributorily negligent.

Prior to trial, Union Pacific "admit[ted] liability for the negligence of its employee, [Miesner], in failing to warn [P]laintiff of the approach of the Amtrak train and admit[ted] liability for any injuries of [P]laintiff which were proximately caused by the occurrence of September 23, 2003."

The case was tried before a jury. On the third day of trial Amtrak withdrew its affirmative defense of contributory negligence. At the close of Plaintiff's case, Amtrak moved for a directed verdict to remove the issue of punitive damages, which the trial court granted. On the last day of trial, Amtrak admitted "liability for any injuries of [P]laintiff which were proximately caused by the occurrence of September 23, 2003." At the close of all the evidence, Defendants moved to "strike all the evidence that has been introduced into this case concerning the liability issues[.]" The trial court denied Defendants' motion and instructed the jury on negligence.

Thereafter, the jury returned a verdict against Defendants and found Plaintiff's total damages to be $5 million. The trial court then entered a judgment pursuant to the jury's verdict. Subsequently, Defendants filed a motion for a new trial or, in the alternative, a motion for remittitur, which the trial court denied. This appeal by Defendants followed.

 Our review of a trial court's ruling denying a motion for a new trial is for abuse of discretion. *Kehr v. Knapp*, 136 S.W.3d 118, 122 (Mo.App. E.D.2004). We also review a trial court's ruling denying a motion for remittitur for abuse of discretion. *LaRose v. Washington University*, 154 S.W.3d 365, 370 (Mo.App. E.D.2004). Under the abuse of discretion standard, we will only reverse the trial court's decision if there is a substantial or glaring injustice. *Kehr*, 136 S.W.3d at 122. A trial court abuses its discretion when its ruling shocks the sense of justice, shows a lack of

consideration, and is obviously against the logic of the circumstances. *Payne v. Cornhusker Motor Lines, Inc.,* 177 S.W.3d 820, 836 (Mo.App. E.D.2005). A trial court does not abuse its discretion if reasonable persons could differ on the propriety of the court's decision. *Kehr,* 136 S.W.3d at 122–23.

■ In their first point on appeal, Defendants argue that the trial court erred in denying their motion for a new trial because it admitted evidence concerning Defendants' negligence when "liability was unequivocally admitted by Defendants." Defendants maintain that because they admitted liability, evidence concerning their negligence was irrelevant.

■ Our review of a trial court's ruling regarding the admissibility of evidence is for abuse of discretion. *Payne,* 177 S.W.3d at 836. It is within the trial court's discretion to determine whether evidence is relevant, and we will not reverse its decision absent an abuse of that discretion. *Uxa ex rel. Uxa v. Marconi,* 128 S.W.3d 121, 130 (Mo.App. E.D.2003). Evidence is relevant if it tends to prove or disprove a fact in issue or corroborates other evidence in the case. *Id.*

■ Even when a defendant makes an unqualified admission of liability, a plaintiff has the right to introduce evidence relevant to the issue of liability. *Ruppel v. Clayes,* 230 Mo.App. 699, 72 S.W.2d 833, 835 (St.L.1934). A defendant "cannot deprive [a] plaintiff of the right to present to the jury, in his own way, competent and relevant evidence to show all the circumstances attending [to] the accident." *Id.* To allow a defendant to substitute a "naked admission" for a full picture of the events may rob the evidence of much of its fair and legitimate weight. *Id.* at 836.

In this case, Union Pacific made a general admission of liability prior to trial.

Amtrak made a general admission of liability on the last day of trial. Defendants contend that because of their admissions of liability, the trial court should not have admitted testimony concerning the project on which Plaintiff was working, the machinery involved on the project, the specific facts of the accident, Union Pacific's safety program, the speed of the train, the site of the accident, the train schedule, general safety rules, train braking, train warning devices, and the stopping capabilities of locomotives. (collectively "evidence pertaining to Defendants' negligence").

But Amtrak did not withdraw its contributory negligence affirmative defense or admit liability until after evidence pertaining to Defendants' negligence was introduced. Thus, at the time evidence pertaining to Defendants' negligence was introduced, it was relevant to prove that Amtrak had been negligent or to disprove that Plaintiff had been contributorily negligent. Furthermore, under *Ruppel,* Plaintiff was entitled to introduce competent and relevant evidence showing the circumstances of the accident in this case. Therefore, the trial court did not abuse its discretion in admitting evidence concerning Defendants' negligence when liability was admitted by Defendants. Point denied.

In their second point on appeal, Defendants maintain the trial court erred in denying Defendants' motion for a new trial and motions for a mistrial because Plaintiff's counsel made inflammatory comments in closing argument.

■ Great deference is given to a trial court's denial of a motion for a new trial, particularly when the alleged basis for a new trial concerns comments by opposing counsel. *Metro Waste Systems v. A.L.D. Services,* 924 S.W.2d 335, 339–40 (Mo.App. E.D.1996). Counsel is permitted

wide latitude and discretion in referring to evidence and arguing inferences during closing argument. *Nelson v. Waxman,* 9 S.W.3d 601, 606 (Mo.banc 2000). We will only reverse when counsel's comments, viewed in light of the entire record, were plainly unwarranted and clearly injurious to the other party. *Hemann v. Camolaur, Inc.,* 127 S.W.3d 706, 710 (Mo.App. W.D. 2004).

■ "A mistrial is a drastic remedy." *Buatte v. Schnuck Markets, Inc.,* 98 S.W.3d 569, 575 (Mo.App. E.D.2002). We review a trial court's ruling on a motion for a mistrial for abuse of discretion. *Id.*

■ Defendants first contend that they were entitled to a new trial or a mistrial because Plaintiff's counsel argued that Defendants had not accepted "corporate responsibility in the chain of command up at the top."

In the light of the whole record, this comment was within Plaintiff's counsel's latitude and discretion. Union Pacific knew about the problem with the tamper approximately one week before September 23 because employees had requested that it be fixed. But because the defective tamper was not fixed by September 23, Plaintiff had to exit the tamper's cab and stand between the track under repair and the live track to do his work. In addition, although Union Pacific had the right to control the speed at which the trains traveled, it did not do so in this case, as the Amtrak train exceeded 70 miles per hour. This occurred in a construction zone where Union Pacific train speed was limited to 40 miles per hour in order to protect track worker safety.

An arguable inference from the above evidence is that Plaintiff was placed in a position of peril due to Union Pacific's failure to fix the tamper and Defendants' failure to control the speed of the Amtrak train. Thus, we cannot say that counsel's argument that Defendants had not accepted "corporate responsibility in the chain of command up at the top" was plainly unwarranted and clearly injurious to Defendants or that the trial court erred in granting Defendants' motion for a mistrial.

■ Defendants also argue that they were entitled to a new trial or a mistrial because Plaintiff's counsel argued that Defendants were "more concerned about their profits than they were about safety."

In the light of the whole record, this comment was within Plaintiff's counsel's latitude and discretion to argue: (1) why Amtrak's engineer, whose train was 30 minutes behind schedule, accelerated his train speed from 66 to 73 miles per hour after he saw Plaintiff on the track and (2) why United Pacific failed to provide Plaintiff with a properly functioning tamper machine. Thus, we cannot say that counsel's comment during closing argument that Defendants were "more interested in profits than safety" was plainly unwarranted and clearly injurious to Defendants or that the trial court erred in not granting Defendants' motion for a mistrial.

Therefore, the trial court did not abuse its discretion in denying Defendants' motion for a new trial or Defendants' motions for a mistrial because of Plaintiff's counsel's comments in closing argument. Point denied.

■ In their third point on appeal, Defendants argue that the trial court erred in denying their motion for a new trial because the jury was improperly instructed. Defendants maintain that it was improper for the court to instruct the jury on the issue of Defendants' negligence when the Defendants had admitted liability.

■ Whether or not a jury was properly instructed is a question of law that we

review de novo. *Boggs ex rel. Boggs v. Lay,* 164 S.W.3d 4, 20 (Mo.App. E.D.2005).

Defendants contend the court erred in accepting Instruction Nos. 6 and 7 and the verdict form (collectively "Plaintiffs' submitted instructions"). Instruction No. 6 states in relevant part: "Your verdict must be for [Plaintiff] if you believe ... [Union Pacific] [was negligent] and ... such negligence resulted in whole or in part in injury to [P]laintiff." Instruction No. 7 states in relevant part: "Your verdict must be for [Plaintiff] if you believe ... [Amtrak] [was negligent] and ... such negligence resulted in whole or in part in injury to [P]laintiff." The verdict form required the jury to make a determination of whether or not each Defendant was negligent prior to reaching the issue of damages.

Defendants argue that Plaintiff's submitted instructions confused jurors as to the issues in the case because Plaintiff's instructions were focused on liability, negligence and fault, when the sole issue submitted to the jury was damages. Defendants further assert the court erred in denying their proposed Instructions A and C and their proposed verdict form ("Defendants' proposed instructions"). Defendants' proposed instructions would have instructed the jury to disregard any evidence of negligence and would have limited the jury's determination to a finding of damages only.

Plaintiff retorts that negligence was a relevant question for the jury's determination because Plaintiff rejected Defendants' admissions of liability and exercised his right to introduce evidence relevant to the issue of liability. We agree.

As discussed above in the first point on appeal, Plaintiff did not have to accept Defendants' admissions of liability and chose to introduce evidence pertaining to Defendants' negligence. Because Plaintiff introduced evidence pertaining to Defen-

dants' negligence, the trial court did not err by instructing the jury on the issue of Defendant's negligence. Point denied.

◼ In their fourth point on appeal, Defendants contend the trial court erred in denying their motion for a new trial because the court improperly instructed the jury on Plaintiff's common law negligence claim against Amtrak. Defendants assert the trial court erred in accepting Plaintiff's Instruction Nos. 5 and 7. Instruction No. 5 states in relevant part: "The term 'negligent' or 'negligence' as applied to [Amtrak] means the failure to use that degree of care that a very careful person would use under the same or similar circumstances." Instruction No. 7 states in relevant part: "Your verdict must be for [Plaintiff] if you believe ... First, [Amtrak] knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, or slackened speed, but failed to do so[.]"

Defendants contend that the portion of Instruction No. 5 defining negligence as applied to Amtrak as "the failure to use that degree of care that a very careful person would use" imposed on Amtrak a standard of care greater than is required by law. Similarly, Defendant contends that the portion of Instruction No. 7 advising the jury that Amtrak had a duty to use "the highest degree of care" imposed on Amtrak a standard of care greater than is required by law. Neither Instruction No. 5 nor Instruction No. 7 are found in MAI.

◼ Whether or not a jury was properly instructed is a question of law that we review de novo. *Boggs,* 164 S.W.3d at 20. Where the challenged instruction is not found in MAI, the instruction is proper if it follows the substantive law and can be readily understood. *Rice v. Bol,* 116 S.W.3d 599, 606 (Mo.App. W.D.

2003). If a jury instruction imposes on a defendant a standard of care greater than that required by the law, it is prejudicially erroneous and a reversal on appeal is mandated. *Lee v. Terminal Railroad Ass'n,* 669 S.W.2d 564, 566 (Mo.App. E.D.1984).

■■■ There are few situations in which a statute or the courts impose a duty to use "the highest degree of care," or "that degree of care that a very careful person would use." *Syn, Inc. v. Beebe,* 200 S.W.3d 122, 133 (Mo.App. W.D.2006). Courts have most commonly imposed this heightened duty on the operators of motor vehicles. *Id.* "The courts have also imposed a [heightened] degree of care on electric companies, those who use firearms, or those who handle explosives." *Id.*

■■■ "The degree of care required of persons having charge of locomotives ... varies according to the circumstances of the case, and must be proportioned to the danger to be apprehended of inflicting injury upon others." *Brown v. The Hannibal & St. Joseph R.R. Co.,* 50 Mo. 461, 467 (Mo.1872). "At places where the railroad has no right to expect a clear track its duty is to exercise ordinary care to maintain a lookout for persons upon the track; and at all other places there is no duty on the trainmen to act until they actually see a person, a trespasser, in danger." *Lee,* 669 S.W.2d at 565 (wrongful death action against railroad after train stuck and killed child who was lying between rails on railroad track) (quoting *Coonce v. Missouri Pacific Railroad Company,* 358 S.W.2d 852, 854 (Mo.1962) (personal injury action against railroad after train struck and injured plaintiff who was sleeping on railroad track)). The issue in *Lee* and *Coonce* was whether a defendant-railroad has the duty to exercise either ordinary care or the highest degree of care in *keeping a lookout* for persons on rail-road tracks. *Lee,* 669 S.W.2d at 565; *Coonce,* 358 S.W.2d at 854.

In contrast, the issue in this case is whether a defendant-railroad has the duty to exercise the highest degree of care once the engineer *actually sees* a person on the railroad tracks and has an opportunity to slow down or stop the train. We find that under these circumstances more than ordinary care is required; rather, the highest degree of care is required. Therefore, we hold that a railroad has the duty to exercise "the highest degree of care," or "that degree of care that a very careful person would use," once the engineer actually sees a person on the railroad tracks and has an opportunity to slow down or stop the train.

Because the jury instruction did not impose on the railroad a standard of care greater than that required by the law, it was not prejudicially erroneous. Point denied.

In their fifth point on appeal, Defendants assert the trial court erred in denying their motion for a new trial because it admitted "expert" opinion testimony from Scott Kenner ("Kenner"), an Amtrak employee and lay witness, on an ultimate issue in the case.

Our review of a trial court's ruling regarding the admissibility of evidence is for abuse of discretion. *Payne,* 177 S.W.3d at 836.

■■■ An expert may render an opinion as to an ultimate issue in a case. *Mohr v. Mobley,* 938 S.W.2d 319, 322 (Mo.App. W.D.1997). In contrast, a lay witness usually cannot render an opinion as to the ultimate issue in a case. *Id.* A party who raises a subject waives the right to challenge further evidentiary development of that subject. *Turnbo by Capra v. City of St. Charles,* 932 S.W.2d 851, 857 (Mo.App. E.D.1996). A party cannot prove preju-

dice when the admission of the evidence is cumulative of other properly admitted evidence. *Metro,* 924 S.W.2d at 338.

Defendants first contend that Plaintiff's counsel improperly obtained opinions and testimony from Kenner as to whether Amtrak's conduct was "in conscious disregard" of Plaintiff's safety.

Although Plaintiff's counsel asked Kenner whether Amtrak's crew had consciously disregarded Plaintiff's safety, the court sustained Defendants' objection. Kenner did not testify on the issue of whether Amtrak consciously disregarded Plaintiff's safety. Consequently, the trial court did not err in admitting non-existent testimony.

■ Defendants also contend that Plaintiff's counsel improperly obtained opinions and testimony from Kenner on "the legal duty and responsibility of Amtrak." Specifically, Plaintiff's counsel asked Kenner whether Amtrak recognized that it has the responsibility to protect individuals from being struck by their trains. Kenner answered in the affirmative.

Assuming, *arguendo,* that Kenner's testimony constitutes a lay witness rendering an opinion as to the ultimate issue in a case, Defendants had previously raised the subject of Amtrak's responsibility earlier in the trial, when Defendants' counsel asked a Union Pacific employee about Amtrak's responsibility to others. Because Defendants raised the subject of Amtrak's responsibility, they waive the right to challenge further evidentiary development of that subject.

Moreover, Kenner had testified earlier that Amtrak has a responsibility to ring the bell and blow the whistle when approaching workers on the track. Thus, Defendants cannot establish prejudice, in

that Kenner's testimony is cumulative of other properly admitted evidence.

Therefore, the trial court did not abuse its discretion in admitting Kenner's testimony regarding Amtrak's responsibility because Defendants raised this subject and because Defendants cannot establish prejudice. Point denied.

In their sixth point on appeal, Defendants claim the trial court erred in denying their motion for a new trial because the court improperly allowed testimony and instructed the jury concerning the Amtrak train's speed.

■ We first address Defendant's contention that the trial court erred in submitting Instruction Nos. 7 and 8. Whether or not a jury was properly instructed is a question of law that we review de novo. *Boggs,* 164 S.W.3d at 20.

■ Submission of a claim in a verdict director that allows the jury to find a defendant liable if it found that the train was operating an excessive speed is preempted by federal law and fails to state a claim. *Griffin v. Kansas City Southern Ry. Co.,* 965 S.W.2d 458, 460 (Mo.App. W.D.1998). But a claim that a train failed to slacken its speed in response to a specific, individual hazard is not preempted by federal law and is cognizable. *Id.* at 460–61. A "specific, individual hazard" includes a person standing on a railroad track. *Alcorn v. Union Pacific R.R. Co.,* 50 S.W.3d 226, 242 (Mo. banc 2001) (citing *Bashir v. National Railroad Passenger Corp.,* 929 F.Supp. 404, 412 (S.D.Fla. 1996)). A proper verdict director must set forth the specific individual hazard. *See Griffin,* 965 S.W.2d at 460. A verdict director is incorrect if it permits the jury to find the defendant liable merely for traveling too quickly considering the time and the place. *Id.* at 461.

In this case, Instruction No. 7 states:

Your verdict must be for [Plaintiff] if you believe:

First, [Amtrak] knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have:

> stopped, or
>
> slackened speed,
>
> but failed to do so; and

Second, [Amtrak] was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to [Plaintiff].

Instruction No. 8 states: "The speed of the Amtrak train in this case is governed by federal regulations. You are instructed that the train in this case was operating within that speed limit.... The only claim you can consider against [Amtrak] is contained in Instruction No. 7."

Apparently Defendants contend that the combined language of Instruction Nos. 7 and 8 is erroneous because it allows the jury to believe that the Amtrak train's speed could play a role in their verdict, even though the Amtrak train's speed was preempted by federal regulations. But because Plaintiff's claim was that the Amtrak train failed to stop or slacken its speed in response to a specific, individual hazard, i.e. Plaintiff, this claim is not preempted by federal law and is cognizable.

Moreover, because Instruction No. 7 required the jury to find that (1) Amtrak knew or could have known that there was a reasonable likelihood of collision and (2) that Amtrak's negligence directly caused or contributed to cause damage to Plaintiff, this instruction adequately sets forth Plaintiff as the specific, individual hazard, as it was uncontroverted that Plaintiff was standing on the railroad tracks at the time of the collision with the Amtrak train.

Furthermore, Instruction No. 7 does not permit the jury to find Amtrak merely liable for traveling too quickly considering the time and the place.

Thus, the trial court did not err in submitting Instruction Nos. 7 and 8.

■ We will now review Defendant's contention that the trial court erred in allowing testimony concerning train speed. Our review of a trial court's ruling regarding the admissibility of evidence is for abuse of discretion. *Payne,* 177 S.W.3d at 836.

Defendants assert that because there is no question that the Amtrak train was traveling within the proper speed limit at the time of the incident, evidence of speed is specifically preempted by federal law, citing *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). But *CSX* merely holds that federal law preempts a state common law "negligence *action* only insofar as it asserts that [a defendant's] train was traveling at an excessive speed." 507 U.S. at 676, 113 S.Ct. 1732 (emphasis added). Thus, Defendants contention is without merit because Defendants do not cite any authority for the proposition that federal law preempts *evidence* of train speed. Defendants' contention also lacks merit because, as discussed above, Plaintiff's claim that the Amtrak train failed to stop or slacken its speed in response to a specific, individual hazard is cognizable and does not infringe on federal regulations.

Therefore, the trial court did not err by admitting testimony and instructing the jury concerning the Amtrak train's speed. Point denied.

■ In their seventh point on appeal, Defendants maintain the trial court erred in denying their motion for a new trial because the court admitted testimony regarding Amtrak's surveillance of Plaintiff.

A party will only prevail on a claim of error concerning the admission of evidence if the party shows prejudice. *Goede v. Aerojet General Corp.*, 143 S.W.3d 14, 19 (Mo.App. E.D.2004). Allegations of prejudice must be more than mere conclusory allegations. *See id.*

In this case, the only portion of testimony cited by Defendants is one page of the transcript, where Plaintiff's counsel asked Jeannine Dearlove ("Dearlove"), a representative of Amtrak: "[I]sn't it true that you were the Amtrak person ... who made the decision to order undercover secret surveillance on [Plaintiff] and his family?" Dearlove responded, "I hired an investigator to look at [Plaintiff's] activities."

Defendants claim that the above testimony was prejudicial because its only purpose was "to inflame the passion of the jury by claiming that [P]laintiff was subjected to an invasion of his privacy by the individual performing the surveillance." Because we find that Defendants' allegation of prejudice is merely conclusory, Defendants have not shown prejudice. Therefore, the trial court did not abuse its discretion in admitting testimony regarding Amtrak's surveillance of Plaintiff. Point denied.

In their eighth point on appeal, Defendants assert the trial court erred in denying Defendant's motion for a new trial because the court excluded testimony from Steve Rowe ("Rowe"), a Union Pacific employee, that the average retirement age of Union Pacific machine operators was between 61 and 62 years old. The trial court sustained Plaintiff's objection to this testimony, which was based, in part, on relevancy. Defendants contend that Rowe's testimony was relevant to the issue of damages. Additionally, Defendants argue that they should have been allowed to present Rowe's testimony as rebuttal to

Plaintiff's testimony that he had planned to retire at the age of 67.

It is within the trial court's discretion to determine whether evidence is relevant, and we will not reverse its ruling absent an abuse of that discretion. *Uxa*, 128 S.W.3d at 130. Evidence is relevant if the evidence offered tends to prove or disprove a fact in issue or corroborates other evidence in the case. *Id.*

In this case, Plaintiff testified that he had planned to retire at the age of 67, when his wife would be 62, so that they could retire together. Plaintiff's retirement plans affected how many years of earnings would be included in future wage loss calculations, and thus, were relevant to the calculation of Plaintiff's economic damages. During Defendants' offer of proof, Rowe stated that he could only testify regarding the average retirement age of other, unnamed, former employees with circumstances dissimilar to Plaintiff. Because Rowe's testimony that the average retirement age of Union Pacific machine operators is between 61 and 62 years old would not prove or disprove when Plaintiff himself planned to retire, it was not relevant to the calculation of Plaintiff's economic damages. Therefore, the trial court did not abuse its discretion in excluding Rowe's testimony. Point denied.

In their final point on appeal, Defendants contend that the trial court abused its discretion in failing to remit Plaintiff's damages to an amount less than $5 million. Defendants assert that the non-economic portion of Plaintiff's damages is grossly disproportionate to the economic portion.

We will only interfere with the trial court and jury's judgment when the size of the verdict is manifestly unjust. *Alcorn*, 50 S.W.3d at 249–250. In determining whether a verdict is manifestly un-

just, we view the evidence in the light most favorable to the verdict. *Id.* at 250.

 Remittitur is appropriate where the jury's verdict is excessive. *Id.* at 249. A jury's verdict is excessive when it exceeds fair and reasonable compensation for the plaintiff's damages. *Id.* at 250. We defer to the trial court's decision whether or not to remit a verdict because the trial court is in a superior position to observe the witnesses, including the plaintiff. *Id.* In *Alcorn,* the Missouri Supreme Court upheld a $25 million award in compensatory damages, even though it reflected a ratio of non-economic to economic damages of 11.5 to 1, noting there is no bright line test or formula in computing a plaintiff's non-economic losses. *Id.* at 250, n. 24.

In this case, the jury's verdict was for $5 million in compensatory damages. Viewing the record in the light most favorable to Plaintiff, about $3.8 million of this award is non-economic and about $1.2 million is economic. These figures reflect an approximate ratio of non-economic to economic damages of 3.5 to 1, much less than the ratio in *Alcorn.*

Because we defer to the trial court's decision and because we find no basis for overturning the trial court and jury's judgment, the trial court did not abuse its discretion in denying Defendants' motion for remittitur. Point denied.

Based on the foregoing, we affirm the trial court's judgment.

GEORGE W. DRAPER III, P.J., and ROBERT G. DOWD, JR., J., Concur.