**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1695**

MARK E. BENSON,

           Plaintiff - Appellee,

      v.

CSX TRANSPORTATION, INCORPORATED, a corporation,

           Defendant - Appellant,

      and

GATX FINANCIAL CORPORATION, d/b/a GATX Rail, a
Delaware corporation; ARKEMA, INCORPORATED, formerly
known as Atofina Chemicals, Incorporated, a Pennsylvania
corporation; PADUCAH & LOUISVILLE RAILWAY, INCORPORATED,
a Kentucky corporation; RESCAR, INCORPORATED, a/k/a Rescar
Industries, Incorporated, a Texas corporation,

           Defendants.

Appeal from the United States District Court for the Southern
District of West Virginia, at Huntington.  Robert C. Chambers,
District Judge.  (3:05-cv-00384)

Argued:  March 19, 2008            Decided:  April 23, 2008

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme
Court of the United States, sitting by designation, and MOTZ and
SHEDD, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished opinion. Judge Shedd wrote the opinion, in which Associate Justice O'Connor and Judge Motz joined.

————————————

**ARGUED:** Marc Ellis Williams, HUDDLESTON & BOLEN, L.L.P., Huntington, West Virginia, for Appellant. William A. Kvas, HUNEGS, LENEAVE & KVAS, P.A., Minneapolis, Minnesota, for Appellee. **ON BRIEF:** Paul J. Loftus, HUDDLESTON & BOLEN, L.L.P., Huntington, West Virginia, for Appellant. W. Michael Frazier, FRAZIER & OXLEY, L.C., Huntington, West Virginia, for Appellee.

————————————

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Raising several issues, CSX Transportation, Inc. ("CSX") appeals from a jury verdict in favor of Plaintiff Mark E. Benson. We find no error in the trial below. However, we hold that the district court erred in not granting CSX a setoff in the amount Benson received from a settlement with defendants GATX Financial Corp., Arkema, Inc., Paducah and Louisville Railway, Inc., and Rescar, Inc. (together, the "Settling Defendants"). Accordingly, we affirm in part, vacate in part, and remand for entry of a pro tanto setoff against the jury's verdict.

I

On May 7, 2003, Benson suffered two exposures to hydrochloric acid ("HCl") while working as a locomotive engineer in CSX's Parkersburg, West Virginia, train yard. HCl is a highly corrosive hazardous material that can cause injury when breathed into the lungs. The first exposure occurred shortly after 5:00 a.m., when Benson coupled his locomotive to a tank car containing HCl. Benson soon noticed an unusual odor and began to experience dryness in his eyes and mouth, as well as a metallic taste on his tongue. After a few minutes, a co-worker notified Benson that the tank car was

3

leaking, releasing a cloud of HCl vapor six to eight feet into the air above the car.[1]

Benson immediately exited the locomotive and left the area of the leaking car. He reported the leak to his supervisor, yardmaster Michael Smith. Smith in turn contacted Carl McDowell, a CSX yardmaster with hazardous materials training and summoned him to the yard. By the time McDowell arrived, Benson had re-boarded the engine in order to move the leaking car, resulting in a second HCl exposure. The parties dispute whether Benson re-boarded the engine at his own initiative or in response to Smith's order to do so. In order to move the tank car, Benson was required to engage in a number of "zigzag" movements through the yard. Each movement of the car released a cloud of HCl vapor from the top of the car, and Benson again experienced dry eyes and mouth, a metallic taste, nausea, and choking.

Benson worked two shifts after the exposure. However, he continued to have difficulty breathing and chest pain when exposed

---

[1]Later investigation determined that the tank car coupled to Benson's engine was leaking through a damaged rupture disc, a device designed to break once the pressure inside the tank car reached a certain point, thereby venting pressure from the car and preventing catastrophic tank failure. It is not disputed that the initial leak resulted from the negligence of the Settling Defendants, which are, respectively, the owner of the tank car, the shipper of the leaking HCl, the common carrier who handled the car prior to delivery to CSX, and the company that repaired the leaking car in Louisville, Kentucky, while en route to CSX's Parkersburg yard.

to diesel exhaust, preventing him from returning to work as an engineer. Consequently, Benson brought this suit pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, et seq., claiming that his HCl exposures resulted from the defendants' negligence and left him with "severe and permanent injuries to his lungs and respiratory system." J.A. 26.

Prior to trial, Benson settled all his claims against the Settling Defendants for approximately $88,500. He then proceeded to trial against CSX, limiting his claim to injuries caused by CSX's negligence in ordering him back onto the engine to move the tank car (i.e., injuries resulting from the second exposure).

At trial, CSX sought to assert a defense of contributory negligence based on its claim that Benson re-boarded the engine without having been instructed to do so. The district court granted Benson's motion for judgment as a matter of law on this issue, finding the evidence insufficient to support that defense. The jury found CSX liable and awarded Benson $750,000. The district court denied CSX's post-trial motion to alter or amend the judgment, in which CSX argued (as it had throughout the trial) that it was entitled to a setoff against the verdict for the amount Benson received from the Settling Defendants. CSX now appeals.

CSX's principal argument on appeal is that the district court erred in granting judgment as a matter of law on CSX's contributory negligence defense. Pursuant to Fed. R. Civ. P. 50(a), a "district court may grant a motion for judgment as a matter of law during a jury trial after a party has been fully heard on an issue only if there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Brown v. CSX Transp., Inc., 18 F.3d 245, 248 (4th Cir. 1994)(internal quotation and citation omitted). We review the district court's grant of judgment as a matter of law de novo, applying the same standard. Id.

FELA provides that the damages an injured employee may recover from his common carrier employer are to be reduced in proportion to the amount of injury caused by the employee's contributory negligence. 45 U.S.C. § 53. By contrast, FELA prohibits the common law defense of assumption of the risk. 45 U.S.C. § 54. Accordingly, a district court in a FELA suit must determine whether an employer's evidence supports the permitted defense of contributory negligence, or whether it instead supports the prohibited defense of assumption of the risk. See Tiller v. Atl. Coast Line R. Co., 318 U.S. 54, 66-67 (1943).

Contributory negligence is a "careless act or omission on the plaintiff's part tending to add new dangers to conditions that the

employer negligently created or permitted to exist." Taylor v. Burlington N. R.R. Co., 787 F.2d 1309, 1316 (9th Cir. 1986). By contrast, "an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk." Id. Thus:

> [W]hen an employee carries out his supervisor's general order in an unsafe manner, he is responsible under FELA for his own contributory negligence. But when an employee carries out a direct order, even if he has reason to know the order exposes him to danger, he is not contributorily negligent; rather his conduct falls under the abolished doctrine of assumption of risk.

Jenkins v. Union Pac. R.R. Co., 22 F.3d 206, 211 (9th Cir. 1994).

Here, CSX claims that Benson was contributorily negligent because he re-boarded the engine coupled to the leaking tank car without being instructed to do so. In support of this argument, CSX cites McDowell's trial testimony that (1) he did not ask Smith to order Benson to re-board the engine, and (2) based on his experience and training in dealing with hazardous materials, he would not have ordered anyone to go near the leaking tank car before he arrived on the scene and assessed the situation. Benson, by contrast, testified that he re-boarded the engine in response to a direct order from Smith, which he believed was relayed from McDowell. Smith did not testify. Accordingly, Benson contends that the evidence supports at most the common law defense of assumption of the risk, which is not permitted under FELA.

7

We hold that the district court correctly granted Benson's motion for judgment as a matter of law. The only relevant testimony CSX points to -- McDowell's statement that he never told Smith to order Benson to re-board the engine -- does not contradict Benson's testimony that Smith gave him such an order. Because the uncontradicted evidence at trial thus showed that Benson boarded the locomotive upon the direct order of his supervisor, his actions did not constitute contributory negligence.

III

CSX also argues that the district court erred by refusing to grant a setoff against the jury's verdict in the amount Benson recovered from the Settling Defendants. We review this legal issue de novo. Chisholm v. UHP Projects, Inc., 205 F.3d 731, 734 (4th Cir. 2000).

Joint and several liability is the traditional rule in FELA cases. Norfolk & W. Ry. Co. v. Ayers, 538 U.S. 135, 163 (2003). Within this framework, a FELA defendant is entitled to a pro tanto setoff against a jury verdict in the amount of any settlement the plaintiff obtained from another party who, together with the defendant, is jointly and severally liable for the plaintiff's harm. See, e.g., Schadel v. Iowa Interstate R.R., Ltd., 381 F.3d 671 (7th Cir. 2004); Hess v. Norfolk S. Ry. Co., 835 N.E.2d 679 (Ohio 2005).

8

The question in this case is whether CSX and the Settling Defendants are jointly and severally liable for Benson's injury, such that a setoff is required. Benson contends that they are not because the negligent conduct of the Settling Defendants giving rise to the tank car's initial leak, and thus Benson's first exposure, constituted a separate tort from CSX's negligence in ordering Benson to re-board the engine after the leak had been discovered (which resulted in his second exposure). CSX, on the other hand, argues that Benson's strategic choice at trial to present the two exposures as two separate torts does not change the fact that Benson suffered a unitary injury that cannot be apportioned between the exposures.

"If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, each person is jointly and severally liable for the recoverable damages caused by the tortious conduct." Restatement (Third) of Torts: Apportionment Liab. § A18 (2000).[2] The Restatement further provides that an injury is indivisible if the evidence does not provide a reasonable basis for

_____

[2]Courts have frequently consulted Restatements for guidance on the common law principles embodied in FELA. See, e.g., Stevens v. Bangor and Aroostook R. Co., 97 F.3d 594, 602 (1st Cir. 1996); Ries v. Nat'l R.R. Passenger Corp., 960 F.2d 1156, 1158-59 (3d Cir. 1992).

9

the factfinder to determine "the amount of damages separately caused" by the independent tortious conduct of two or more tortfeasors. Id. § 26. Furthermore, "there is no temporal requirement for the actions of the tortfeasors" in order for joint and several liability to attach. Rather, "[t]he requirement is only that the independent tortious acts 'concur' to cause an injury that is not divisible based on the causal contribution of the tortfeasors." Id. § A18.

Thus, our inquiry turns on whether Benson's injury is divisible or indivisible. Although occurring at separate times (albeit only moments apart) and resulting from distinct acts of negligence by different defendants, Benson's resulting injury is not "divisible based on the causal contribution of the tortfeasors." At trial, neither party introduced any evidence that would have permitted the jury to determine the amount of damages separately attributable to Benson's first and second exposures.[3]

---

[3]Generally, the jury in a FELA case is not permitted to apportion damages. See Ayers, 538 U.S. at 160. Here, however, Benson argued that his first exposure created a "preexisting condition" that was aggravated by the second exposure. When a FELA defendant's negligence aggravates a plaintiff's preexisting condition, the defendant is liable for the plaintiff's total damage unless he can prove the extent of the aggravation. Stevens, 97 F.3d at 601-03. CSX offered no evidence on this point, and thus is liable for the full extent of Benson's injuries under the traditional rules of joint and several liability, which in FELA cases include the right to a pro tanto setoff for the amounts paid by the Settling Defendants. Benson may not avoid this result by recasting the injuries he suffered from the first exposure as a "preexisting condition."

10

In the absence of any such evidence, Benson's injury is indivisible, and CSX is jointly and severally liable for that injury with the Settling Defendants.  Benson was therefore entitled to recover his full damages from any of the defendants, and CSX is entitled to a <u>pro tanto</u> setoff in the amount Benson received from the Settling Defendants.

IV

CSX raises several other challenges to the proceedings below, which we conclude are without merit.  Accordingly, for the foregoing reasons, we affirm in part, vacate in part, and remand for entry of a setoff against the verdict in the amount Benson received from the Settling Defendants.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>