**Leroy PALMER, Respondent,**

v.

**UNION PACIFIC RAILROAD COMPANY, Appellant.**

**No. ED 92841.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 30, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 2010.

Application for Transfer Denied June 29, 2010.

**5.** Respondent's Motion to Strike Exhibits is denied.

846

James W. Erwin, Nicholas J. Lamb, Booker T. Shaw, St. Louis, MO, for appellant.

Daniel R. Francis, St. Louis, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Union Pacific Railroad Company (Union Pacific) appeals from the trial court's judgment entered in accordance with a jury verdict in favor of Leroy Palmer (Palmer) and against Union Pacific in an action brought by Palmer under the Federal Employers' Liability Act (FELA), 45 U.S.C. Section 51 et seq. We affirm.

### Factual and Procedural Background

Palmer initiated this action under FELA. In his First Amended Petition, Palmer alleged that, while employed by Union Pacific, he was a passenger in a Union Pacific vehicle that was involved in a motor vehicle accident. Palmer further alleged that he was injured when a Union

Pacific employee failed to keep a careful lookout and turned in front of a vehicle. Palmer claimed that his injuries and damages were due in whole or in part to Union Pacific's negligence in one or more of the following respects: 1) it failed to provide him with reasonably safe conditions for work; 2) it failed to provide him with a reasonably safe place to work; 3) it failed to provide him with reasonably safe transportation; 4) it failed to maintain a careful lookout; or 5) it negligently and carelessly allowed unsafe practices to become common practice.

Palmer alleged that as a result of Union Pacific's negligent conduct, he suffered serious, painful and permanent injuries to his head, back, neck, left shoulder and upper extremities, including but not limited to vessels, muscles, ligaments, nerves, intervertebral discs, and adjacent structures. Palmer also alleged emotional and psychological damages, including depression and dysthymic disorder.

Palmer filed a pre-trial motion in limine, asking the trial court, as relevant, to prohibit Union Pacific from stating that any other non-party driver had caused any portion or all of Palmer's injuries and damages and from stating that Union Pacific was therefore not responsible for his injuries. The trial court granted this request in part and denied it in part.

Following trial, a jury returned a verdict in favor of Palmer and assessed damages at $1,600,000. Viewing the evidence and all reasonable inferences to be drawn therefrom most favorably to Palmer, the pertinent evidence adduced revealed the following.

Palmer, who worked as a trackman and machine operator for Union Pacific, testified that he drove from his home in Helena, Arkansas, to Rison, Arkansas, to report for work on July 28, 2005. He arrived at Rison around 6:30 a.m. and received his safety and job briefing from his supervisor, Stanley Adams (Adams). During this briefing, Adams told Palmer and the rest of the crew to travel to a location outside of Rison to install ties. The crew was told that they would be working on two crossings. The crew was not given a map of the area and was not told the name of the road leading to the job site. They were merely told to follow Adams.

Palmer rode to Rison in a company vehicle to the first job site with an employee named Bernard Simpson (Simpson). Palmer's supervisor called a dispatcher for "track in time," which is permission to get on the track to work; however, Palmer's crew did not receive permission to install the ties at this job site. Because they did not receive track in time, Palmer and the rest of the crew were told to travel to another crossing outside of Rison. The crew was traveling in several trucks. Adams drove the lead truck. Simpson's truck was the last in line.

The caravan of trucks proceeded north on Highway 79 towards Pine Bluff, Arkansas, but missed the turn to the job site. The trucks turned around in a field and proceeded to travel southbound on Highway 79, with Simpson's truck in the lead. None of the workers knew where they were going because they had not worked in the area before, and the tracks could not be seen from the highway. Simpson slowed the truck he was driving as he tried to find the logging road that led to the job site. Traffic began to back up behind the trucks.

Palmer, who wore a seat belt, was sitting in the back seat of the truck driven by Simpson and was looking forward. Palmer did not recall Simpson activating a turn signal. As Simpson started to turn onto the logging road, his truck was struck by a

green car. The impact knocked Palmer unconscious. When he regained consciousness, Palmer found himself lying across the back seat. Palmer was taken by ambulance to the Jefferson Regional Medical Center in Pine Bluff.

Two other Union Pacific employees who were members of the work crew that day, Simpson and Billy Smith (Smith), testified at trial. Both Simpson and Smith agreed that the crew was not provided clear instructions about where it was to travel and that the crew was not given mile marker information for the job location during the July 28 job briefing. Simpson and Smith both acknowledged that Adams was driving the lead truck when the crew missed the turn to the job site and that Simpson took the lead after the trucks turned around.

Simpson further testified that it was raining that day and the road was wet. After they missed their turn, the crew asked for more directions and was told to go back and look for a stop sign that had a bow on it.

When Simpson arrived at the stop sign, he was driving about 35 miles per hour, which was about 20 miles below the speed limit. He saw a northbound car rapidly approaching, so he stopped the truck at the intersection to let the car pass by. Simpson looked to ensure the way was clear. His turn signal was on. After the northbound car passed him, Simpson began his turn. About halfway through his turn, Simpson heard a car horn. He looked and saw a car approaching in the northbound lane, so he "goosed it." The car struck the two back doors of Simpson's truck. The truck spun around and went into a ditch.

During cross-examination, Palmer asked whether Simpson had ever been convicted of a misdemeanor. Simpson indicated that he had not. When Palmer then asked

Simpson if he had pleaded guilty to first-degree family assault, Simpson admitted that he had. After Simpson indicated that he had forgotten the incident, Palmer stated, "Okay. So I just want to go over the details of how you can forget that incident." Union Pacific objected, and the following bench discussion occurred, after Palmer indicated that Simpson had two convictions:

> The Court: My ruling is you can ask him did he have another conviction, yes or no, and what was it for, this or that.

> [Palmer]: There's another issue. In opening statement he vouched this man was a family man, worried about his wife.

> The Court: I think the prejudice outweighs the relevance. If you want to get into the details of the crime, I say no.

> [Palmer]: I have the case law that says you are allowed to whenever the witness is lying.

> [Union Pacific]: I think the judge can use discretion. So are you sustaining the objection about him getting into it?

> The Court: I am sustaining the objection with respect to the details of the crime.

Subsequently, Palmer again asked Simpson if he had pleaded guilty to first-degree family assault and Simpson indicated he had. Palmer then asked Simpson if he had pleaded guilty to another offense of first-degree assault on a family member. When Simpson denied that he had, Palmer said, "You pled—well, let's go over it then. You did one for your wife and one for your daughter; is that correct?" Simpson replied, "No." After Simpson indicated that he did not think he had to tell about these incidents because they were personal,

Palmer attempted to establish that Simpson "selectively [chose] what truth to tell." Thereafter, the trial court sustained various objections and instructed Palmer to move on. During a recess, the trial court denied Union Pacific's motion for mistrial based on the cross-examination of Simpson with respect to his misdemeanor conviction.

During his trial testimony, Smith further stated that he was driving the second truck, behind Simpson's. The trucks were traveling below the speed limit so that they would not miss the turn-off again. Smith also testified that Simpson activated his left turn signal when he prepared to make his left turn on to the logging road. Simpson's truck was at a dead stop. A big Aramark truck was behind the three Union Pacific trucks on the highway.

Before Simpson could turn, a car approached. After this vehicle passed, Simpson paused for a few seconds, and started to turn. Halfway through Simpson's turn, a car "came up from nowhere," passing the four vehicles. Smith could not see this car because it was behind the Aramark truck. Simpson's truck was halfway into the lane when the car hit the truck. Prior to the collision, the Union Pacific trucks were traveling only two or three miles per hour.

Richard Moore (Moore), a witness to the collision, testified that on July 28, 2005, he was driving an Aramark delivery truck from Pine Bluff to Camden. As Moore traveled south on Highway 79, he came upon three Union Pacific trucks. He could tell the trucks were slowing because their brake lights were activated, so he slowed also, maintaining two—to three-car-lengths between him and the last truck. The Union Pacific trucks stopped.

When Moore approached the three trucks, he could not tell that they were preparing to make a left turn. As Moore slowed his vehicle, he noticed a car passing him at a speed Moore estimated to be in excess of 60 miles per hour. The lead Union Pacific truck then began to make a left-hand turn onto a gravel road. After this first truck began its turn, Moore saw for the first time that the truck's left-hand turn signal was activated. He could not recall if the truck immediately in front of his had its turn signal activated, but remembered seeing the truck's brake lights. The passing car attempted to brake. The turning Union Pacific truck accelerated in an attempt to avoid a collision, but did not succeed.

Portions of the videotaped deposition of Leon Warren (Warren), the driver of the car that struck the Union Pacific truck, were played for the jury. In this deposition, Warren testified that he was traveling northbound on Highway 79 on July 28, 2005. When he approached the Union Pacific trucks, he put on his turn signal to indicate he was going to pass. After he passed two of the vehicles, he started to return to his lane, but noticed another Union Pacific truck ahead of him. This truck got over to the right and appeared to be attempting a u-turn. Warren did not see an access road. Warren did not see a turn signal.

Alex Sylvester (Sylvester), a retired Arkansas State Police Officer, testified that he responded to the accident on July 28. Sylvester testified that the driver of the Union Pacific truck was required by law to use a turn signal. He further testified that drivers were required to travel at a speed that did not impede the flow of traffic on all state highways, unless otherwise posted. Passing on Highway 79 was not prohibited at the location of the accident.

The parties stipulated at trial that Palmer, due to his injuries sustained in the

accident, is medically disabled from returning to work as a trackman or machine operator for Union Pacific.

At the rest of plaintiff's case, Union Pacific moved for a directed verdict, claiming Palmer failed to adduce any evidence that Union Pacific was negligent. Union Pacific argued that, rather, the evidence revealed that the negligence of a third party was the sole cause of Palmer's injuries. The trial court denied the motion, ruling that Palmer had adduced sufficient evidence from which the jury could infer that Simpson failed to properly check for a car approaching in the lane into which he wished to turn, and concluding there was insufficient evidence of sole cause.

During closing argument, Union Pacific argued that Warren's testimony that he did not see the access road, the third Union Pacific truck, or the Aramark truck, did not make sense. Palmer objected, "This is going outside the motion [in limine]." Union Pacific apologized and said it would "tone it down." Later, Union Pacific argued, "Yeah, he was injured, but it wasn't our fault." Union Pacific further told the jury, "What it is to say is that we didn't cause those accidents, Union Pacific—excuse me, those injuries. Union Pacific was not negligent." After stating that Simpson's truck was hit by a car trying to pass four trucks on a wet road, and reminding the jury of Warren's testimony, Union Pacific argued, "And it does make sense that Mr. Warren wouldn't be able to see the turn signal. His vision was impeded by a 10-foot high truck—" The trial court sustained Palmer's objection that this argument addressed nonrailroad conduct.

After the jury returned its verdict, Union Pacific filed several post-trial motions, including a Motion for Judgment Notwithstanding the Verdict (Motion for JNOV), a Motion for New Trial, and a Motion to Amend Judgment. In its Motion for JNOV, Union Pacific argued that the record lacked evidence showing Union Pacific breached its duty to provide a reasonably safe workplace, and that Palmer adduced no evidence of foreseeability. In its Motion for New Trial, Union Pacific asserted, among other things, that the trial court erred when it prohibited Union Pacific from arguing that the negligent conduct of a third party was the sole cause of Palmer's injury. In its Motion to Amend, Union Pacific asked the court for an order amending the judgment to include an offset that reflected Palmer's pretrial settlement with a third party's insurance company for $25,000. The trial court denied Union Pacific's post-trial motions. This appeal follows.

### Points on Appeal

In its first point, Union Pacific claims the trial court erred in denying its Motion for JNOV because Palmer failed to make a submissible case on any of his liability theories, in that Simpson was not required to anticipate that Warren would violate Arkansas traffic laws, and there was no evidence that: 1) Simpson failed to signal a left turn, or that a failure to signal a left turn played any role in causing the accident; 2) Simpson lost control of the truck; 3) vehicle accidents were a reasonably foreseeable consequence of inadequate directions or a failure to supply a map; and 4) Simpson was an unqualified driver.

In its second point, Union Pacific claims the trial court erred in overruling its Motion for New Trial because Union Pacific had the right to discuss the evidence of Warren's negligence and to argue that Warren's negligence was the sole cause of the accident, in that: 1) evidence of Warren's conduct was admitted into evidence; 2) a contention that negligence of a third party was the sole cause of the accident is

a viable defense to an FELA claim; and 3) a party has the right to comment on any evidence admitted at trial and to argue its theory of defense.

In its third point, Union Pacific claims the trial court erred in denying its Motion for a Mistrial because Palmer's cross-examination of Simpson exceeded the permissible scope of Section 491.050 RSMo 2000, in that Palmer asked Simpson about the details of his misdemeanor convictions after the trial court ruled Palmer could not ask such questions.

In its fourth point, Union Pacific claims the trial court erred in overruling Union Pacific's Motion to Amend the Judgment because Union Pacific was entitled to a setoff of the amounts Warren paid to Palmer, in that a plaintiff is entitled to multiple judgments or settlements but only one satisfaction of his or her total damages to avoid a windfall.

### Standard of Review

■ In reviewing a denial of a motion for judgment notwithstanding the verdict, we view the evidence and all reasonable inferences to be drawn therefrom most favorably to the plaintiff, disregarding any contrary evidence. *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 338 (Mo.App. E.D. 2000). Our review is to determine whether the plaintiff made a submissible case. *Id.*

■ We review for abuse of discretion a trial court's denial of a motion for new trial. *Burrows v. Union Pac. R.R. Co.*, 218 S.W.3d 527, 533 (Mo.App. E.D.2007). We will disturb a trial court's ruling only if there is a substantial or glaring injustice. *Id.*

■ A denial of a motion for mistrial and a denial of a motion to amend judgment are also reviewed for abuse of discretion. *Id.* at 535 (standard of review for

trial court's denial of motion for mistrial); *LaRose v. Washington Univ.*, 154 S.W.3d 365, 370 (Mo.App. E.D.2004) (standard of review for trial court's denial of motion to amend judgment).

### Discussion

#### Point I

■ Judgment notwithstanding the verdict is a drastic action, and "should be granted only when reasonable persons could not differ as to the correct disposition of the case." *Coggins*, 37 S.W.3d at 339. "To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability." *Id.* at 338. To recover under FELA, Palmer had to prove: 1) he was injured in the scope of his employment; 2) his employment was in furtherance of Union Pacific's business; 3) Union Pacific was negligent; and 4) Union Pacific's negligence played some part in causing his injury. *Burrus v. Norfolk & W. Ry. Co.*, 977 S.W.2d 39, 43 (Mo.App. E.D.1998). Union Pacific does not dispute that Palmer was injured in the scope of his employment or that his employment was in furtherance of its business; rather, Union Pacific argues that Palmer failed to make a submissible case on any of the theories of negligence submitted to the jury.

The verdict director instructed the jury to find in favor of Palmer if it believed that Union Pacific or any of its employees had negligently caused Palmer's injuries by: 1) failing to keep a careful lookout; 2) failing to properly signal the turn; 3) failing to maintain safe control of the vehicle; 4) failing to provide reasonably safe methods of work; or 5) failing to provide reasonably adequate help. The jury was further instructed that it had to find that Union Pacific or its employees were negligent in any one or more of these respects, and that such negligence resulted, in whole or

in part, in injury to Palmer. Thus, our review is to determine whether Palmer presented substantial evidence of any of these submitted theories. *Coggins,* 37 S.W.3d at 338–39.

■ "An injured railroad employee can recover all of his or her damages from the employer if the employer's negligence caused any part of the employee's injury." *Ward v. Kansas City S. Ry.,* 157 S.W.3d 696, 698 (Mo.App. W.D.2004); *see also* 45 U.S.C. Section 51 (railroad employer liable to employee injured while working if injury resulted in whole or in part from negligence of employer or any of its officers, agents, or employees).

■ Under FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Mo. Pac. R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Our determination is "narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." *Id.* at 506–07, 77 S.Ct. 443. The employee's burden is met when he adduces proof, even though entirely circumstantial, from which a jury may reasonably make this inference. *Id.* at 508, 77 S.Ct. 443.

We conclude Palmer presented substantial evidence that Union Pacific's employee Simpson was negligent in failing to keep a careful lookout and maintain safe control of the vehicle. Viewing the evidence and all reasonable inferences most favorably to Palmer, the evidence reveals that after the Union Pacific trucks missed their initial turn, they made a u-turn, and were impeding the flow of traffic on an interstate highway by traveling 20 miles per hour under the posted 55–miles–per–hour speed limit in their attempt to locate their turn-off a second time. Simpson then slowed his truck, with no left turn signal activated, to 2–3 miles per hour, which further backed up the vehicles following him. Simpson's truck was at a dead stop prior to his attempt to turn, with three vehicles lined up behind him on the highway. After an oncoming car traveled past him in the northbound lane of Highway 79, Simpson paused, then began to turn left. Enough time had elapsed for this oncoming car to have traveled past all four vehicles before Warren began his attempt to pass. Prior to striking Simpson's truck, Warren's car traveled in the northbound lane past the Aramark truck and the two rear Union Pacific vehicles. Yet, Simpson testified that he was unaware of Warren's car attempting to pass the Union Pacific vehicles until he heard its horn blowing. In light of the fact that Simpson had already been impeding traffic for a considerable distance on an interstate highway prior to attempting his unannounced left turn, he would be cognizant of the need to ensure no vehicle was attempting to pass. A jury could reasonably infer that had Simpson checked his rear view mirror prior to attempting the left turn, he would have seen Warren's car passing the three vehicles, and could have remained stationary or braked, instead of accelerating after hearing the horn. *Rogers,* 352 U.S. at 506–08, 77 S.Ct. 443 (employer liable if employer negligence played even slightest part in producing injury; burden met, even if proof is entirely circumstantial, where jury can reasonably infer employer negligence played any part).

■ We also conclude Palmer presented substantial evidence that Union Pacific was negligent in failing to provide reasonably safe methods of work and in failing to provide reasonably adequate help. To make a submissible FELA case

under this theory, Palmer had to show that 1) Union Pacific had a duty to provide a reasonably safe work place, 2) Union Pacific's lack of care played some part, however small, in producing his injury, and 3) the injury was reasonably foreseeable. *Ramsey v. Burlington N. and Santa Fe Ry. Co.*, 130 S.W.3d 646, 651 (Mo.App. E.D. 2004). FELA places upon a railroad employer the duty to provide its employees with a reasonably safe place to work. *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000). The evidence showed that Union Pacific failed to supply its employee drivers with directions to their assigned job location, and the conclusion reasonably may be drawn that this failure played a part in Palmer's injury.

 "The railroad's knowledge or anticipation of the possibility that a general danger is present and that its standard of conduct is inadequate to protect its employees from that harm is all that is required to satisfy [the element of foreseeability]." *Ramsey*, 130 S.W.3d at 651. Here, there was sufficient evidence under FELA's requirements to show Union Pacific knew or should have known that a failure to supply the caravan of Union Pacific drivers with directions to their assigned job location could adversely affect their ability to find their turn-off, causing the drivers to get lost, miss their turn, impede traffic, search for an unidentified road, and make sudden stops or turns. It is reasonable to infer that had Union Pacific provided its drivers with a map or directions to the job site during its safety and job briefings on the morning of July 28, Simpson would not have been impeding traffic by traveling 20 miles per hour below the posted speed limit before identifying the road where he attempted his turn. We conclude Union Pacific had knowledge that a general danger of a vehicle accident was present and that its standard of conduct in failing to provide directions was inadequate to protect its employees from that harm. *Id.* It is the possibility of injury from a work place condition that must be reasonably foreseeable, not knowledge of the precise injury and location. *Id.* at 652.

 "Only where there is a complete absence of probative facts to support the jury's verdict does reversible error result." *Stewart v. Alton & S. Ry. Co.*, 849 S.W.2d 119, 124 (Mo.App. E.D.1993). The case was submissible and Union Pacific's Motion for JNOV was properly denied. *Coggins*, 37 S.W.3d at 338–39.

Point denied.

### Point II

 Union Pacific claims the trial court abused its discretion in denying the railroad's Motion for New Trial because Union Pacific had the right to discuss the evidence of Warren's negligence and to argue that Warren's negligence was the sole cause of the accident. We disagree.

 In a FELA action, an injured railroad employee can recover all of his damages from his employer if the employer's negligence caused any part of the employee's injury, regardless of whether the injury was also caused "in part" by the actions of a third party. *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 165–66, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003); *Ward*, 157 S.W.3d at 698. Given our determination in Point I that the jury could reasonably conclude that Union Pacific's negligence played a part in Palmer's injury, it does not matter that, from the evidence, the jury could reasonably attribute the result to negligence on behalf of Warren also. *Rogers*, 352 U.S. at 506–07, 77 S.Ct. 443 (if conclusion may be drawn that negligence of employer played "any part at all" in injury, case is made for jury even if

evidence allows jury choice of other probabilities). Although the permissible scope of argument is broad, parties cannot urge a claim or defense not justified by the evidence adduced at trial. *Hoehn v. Hampton*, 483 S.W.2d 403, 408 (Mo.App. 1972).

When Union Pacific moved for a directed verdict at the close of plaintiff's evidence, the trial court ruled that Palmer had adduced sufficient evidence from which the jury could infer negligence on the behalf of Union Pacific, thus precluding a sole cause defense. Because the evidence adduced at trial established Union Pacific was negligent, and that its negligence was a cause in Palmer's injury, Union Pacific did not have the right to discuss Warren's negligence or to argue that Warren's negligence was the sole cause of the accident. *Ayers*, 538 U.S. at 161, 123 S.Ct. 1210 (because statute does not authorize apportionment of responsibility between railroad and potentially liable tortfeasors, whether railroad's negligence was immediate reason for employee's injury is irrelevant); *Ward*, 157 S.W.3d at 698; *Hoehn*, 483 S.W.2d at 408. Regardless, in closing, Union Pacific was able to argue, albeit unconvincingly in light of the jury's verdict, that Union Pacific was not negligent and did not cause Palmer's injuries. The trial court did not abuse its discretion in overruling Union Pacific's Motion for New Trial. *Burrows*, 218 S.W.3d at 533 (standard of review).

Point denied.

### Point III

Union Pacific claims the trial court erred in denying its Motion for Mistrial because Palmer's cross-examination of Simpson regarding the details of his misdemeanor convictions exceeded the permissible scope of Section 491.050 RSMo 2000. "A mistrial is a drastic remedy."

*Burrows*, 218 S.W.3d at 535 (internal quotation and citation omitted). We review a trial court's ruling on a motion for mistrial for abuse of discretion, and will reverse only where its ruling shocks the sense of justice, shows a lack of consideration, and is against the logic of the circumstances. *Id.* at 534–35.

Section 491.050 provides that prior convictions may be proven to affect a witness's credibility in civil cases. Section 491.050 RSMo 2000. The statute further provides that proof of such convictions may be made by cross-examining the witness, and states that the witness must answer any question relevant to the conviction. *Id.*

Although generally, witnesses cannot be examined about details of prior crimes, cross-examination about details is permitted if the witness fails to disclose prior convictions and the inquiry is designed to elicit proof of an additional conviction. *State v. Skelton*, 887 S.W.2d 699, 703–04 (Mo.App. S.D.1994). The trial court has discretion to control the scope of this cross-examination and we will not interfere absent abuse. *State v. Simmons*, 825 S.W.2d 361, 364 (Mo.App. E.D.1992).

Here, Palmer was attempting to impeach Simpson's credibility as a witness with his prior convictions by demonstrating that Simpson "selectively [chose] what truth to tell." Simpson initially denied having been convicted of a misdemeanor, but when asked if he had pleaded guilty to first-degree family assault, Simpson indicated that he had forgotten the incident. When Palmer then tried to elicit how Simpson could have forgotten the incident, Union Pacific objected.

During a subsequent bench discussion, Palmer indicated that he wanted to elicit proof of an additional conviction. The trial court sustained Union Pacific's objection,

with respect to eliciting details of the crime. When Palmer resumed his cross-examination by asking Simpson if he had pleaded guilty to another offense of first-degree assault on a family member, Simpson denied that he had. After Simpson made this denial, it was within the trial court's discretion to permit Palmer to test and challenge this statement. *Simmons*, 825 S.W.2d at 364. We find no abuse of discretion in the limited inquiry allowed by the trial court before it instructed Palmer to move on. *Id.* Likewise, we find the trial court's denial of Union Pacific's Motion for Mistrial was within its discretion. *Burrows*, 218 S.W.3d at 534–35.

Point denied.

## Point IV

■ In its fourth point, Union Pacific claims it was entitled to a setoff of $25,000 allegedly paid to Palmer by a non-party to the action below. We disagree, and conclude that the trial court did not abuse its discretion in denying Union Pacific's motion for an order amending the judgment to include a setoff reflecting Palmer's pre-trial settlement with a third party. *La-Rose*, 154 S.W.3d at 370 (standard of review).

In support of its claim that it was entitled to a setoff for an alleged $25,000 settlement Palmer received from a non-party, Union Pacific directs us to four cases from other jurisdictions, in which the railroad employers were allowed a setoff,

or "pro tanto credit" for settlements received by the plaintiffs from other parties. *Schadel v. Iowa Interstate R.R. Ltd.*, 381 F.3d 671 (7th Cir.2004); *Benson v. CSX Transp., Inc.*, 274 Fed.Appx. 273 (4th Cir. 2008) (unpublished opinion); *Hess v. Norfolk S. Ry. Co.*, 106 Ohio St.3d 389, 835 N.E.2d 679 (2005); and *Downer v. CSX Transp., Inc.*, 256 Va. 590, 507 S.E.2d 612 (1998). Three of these cases, *Schadel*, *Downer*, and *Benson*, are immediately distinguishable from the case before us, because the setoff sought by the railroad employers was in connection to settlement recoveries from defendants who were actually named parties in the employees' actions. *Schadel*, 381 F.3d at 673–74; *Downer*, 507 S.E.2d at 613; *Benson*, 274 Fed.Appx. at 274. Accordingly, they are inapposite to our analysis, even if we were to find their reasoning persuasive, which we do not.

■ *Hess*, the remaining case, involved settlement recoveries obtained from third parties—asbestos manufacturers that the injured employees had sued separately for injuries. *Hess*, 835 N.E.2d at 682. In *Hess*, an action alleging negligent exposure to asbestos, the railroad sought a setoff of damages the employees had recovered in their claims against the asbestos manufacturers. *Id.* at 681–82. Although it determined that the railroad employer was not entitled to a proportionate-share reduction of the judgment, the Court's majority opinion held that neither 45 U.S.C. Section 55 nor the common law collateral-source rule [1]

1. The federal common law collateral source rule permits a plaintiff to seek full recovery from a tortfeasor even if the plaintiff has received compensation for his loss, in whole or in part, from an independent source. *Green v. Denver & Rio Grande W. R.R. Co.*, 59 F.3d 1029, 1032 (10th Cir.1995); *CSX Transp., Inc. v. Gardner*, 874 N.E.2d 357, 365 (Ind.Ct.App.2007). 45 U.S.C. Section 55 basically codifies the collateral source rule, while

simultaneously broadening it to allow setoff for sums the railroad tortfeasor contributed or paid to "any insurance, relief benefit, or indemnity" that may have been paid to the injured employee on account of his injury. 45 U.S.C. Section 55; *Gardner*, 874 N.E.2d at 366. "Thus, the [collateral source] rule focuses not on the aggregate amount the plaintiff receives, but on the amount the tortfeasor pays." *Id.* at 365.

prohibited the employer credit for amounts paid in settlement by a fellow tortfeasor and allowed the railroad a pro tanto credit for the settlements. *Id.* at 686–87, 689.

The flaw we perceive in *Hess*'s determination of the setoff issue is that the Court premised its analysis on the common law rule of apportionment, where a partial satisfaction received from one of multiple joint tortfeasors serves to diminish the liability of the nonsettling tortfeasor. *Id.* at 686. This premise, however, overlooks the U.S. Supreme Court's rejection of the suggestion that FELA would permit damages to be apportioned among joint tortfeasors according to the degree of fault attributable to each. *Ayers*, 538 U.S. at 161–65, 123 S.Ct. 1210. We find significant, as did the Court in *Ayers*, that Congress, while expressly directing in FELA the apportionment of responsibility between employer and employee based on comparative fault, did not provide for such apportionment among potentially liable tortfeasors. *Id.* at 161, 123 S.Ct. 1210.

We find the dissent in *Hess* to be more persuasive in its analysis and application of federal law to the question presented. The *Hess* dissent would have affirmed the disallowance of the setoff, stating: "Recognition of a credit would exempt Norfolk from a portion of its liability to the appellees, in contradiction of the express language of the FELA." *Hess*, 835 N.E.2d at 690.

Our independent analysis of *Ayers* leads us to the same conclusion reached by the dissent in *Hess*. In considering the railroad employer's contention that the trial court erred in instructing the jury not to make a deduction from its damages awards for the contribution of non-railroad causes of the employees' injuries, the U.S. Supreme Court held that FELA did not authorize apportionment of damages between railroad and nonrailroad causes.

*Ayers*, 538 U.S. at 159–60, 123 S.Ct. 1210. "Nothing in the statutory text [of FELA] instructs that the amount of damages payable by a liable employer bears reduction when the negligence of a third party also contributed in part to the injury-in-suit." *Id.* at 160, 123 S.Ct. 1210. Declining to create new law by requiring apportionment among potential tortfeasors, the U.S. Supreme Court determined that FELA's express terms placed on the railroad employer the burden of seeking contribution from other tortfeasors. *Id.* at 141, 123 S.Ct. 1210.

We find no abuse of discretion in the trial court's denial of Union Pacific's Motion to Amend. *LaRose*, 154 S.W.3d at 370. Given that an injured railroad employee can recover all of his damages from his railroad employer if his employer's negligence caused any part of the employee's injury, we find that an allowance of setoff for settlement recoveries received on behalf of a nonrailroad tortfeasor is inconsistent with FELA's intent, contradictory to the act's statutory language, and not in accordance with U.S. Supreme Court precedent. *Ayers*, 538 U.S. at 159–60, 123 S.Ct. 1210; *Ward*, 157 S.W.3d at 697.

Point denied.

## Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, P.J., and GEORGE W. DRAPER, III, J., concur.